## PEOPLE *v.* STAHL.

1. HOMICIDE — ABORTION — PROCURING MISCARRIAGE OF PREGNANT WOMAN—OFFENSE COMMITTED.

   Where the death of a pregnant woman results from administering any drug, etc., with intent to procure a miscarriage, in violation of 3 Comp. Laws 1915, § 15225, the offense is manslaughter rather than murder, in view of section 15224.[1]

2. SAME—MURDER—MANSLAUGHTER—WHERE MURDER CHARGE NOT SUPPORTED BY EVIDENCE ERROR TO SUBMIT IT TO JURY.

   Where there was no evidence to support the charge of murder, the trial court was in error in submitting it to the jury.[2]

3. SAME—APPEAL AND ERROR—NEW TRIAL GRANTED.

   In view of this error, and assignment of error that, on cross-examination of the people's chief witness, counsel for defendant were unduly and improperly restricted by the trial court, and a showing on a motion for a new trial that, in a subsequent trial involving the same questions, said witness' testimony was seriously inconsistent with that given by her on the trial in the instant case, a new trial is granted.[3]

Error to Macomb; Reid (Neil E.), J. Submitted October 15, 1925. (Docket No. 126.) Decided April 30, 1926.

Samuel Stahl was convicted of manslaughter, and sentenced to imprisonment for not less than 10 nor more than 15 years in the State prison at Jackson. Reversed.

[1]Homicide, 29 C. J. § 138; [2]Id., 30 C. J. § 642; [3]Criminal Law, 17 C. J. § 3759.

Homicide in commission of, or attempt to commit abortion, see notes in 63 L. R. A. 902; 49 L. R. A. (N. S.) 580.

*Lungerhausen, Weeks, Lungerhausen & Neale* and *Harry C. Milligan,* for appellant.

*Andrew B. Dougherty,* Attorney General, *Christian F. Matthews,* Prosecuting Attorney (*Warren S. Stone,* of counsel), for the people.

CLARK, J.   The information contained a count for murder.   A second count charged manslaughter, setting forth in detail that the woman had been killed by efforts of defendant and another to procure her miscarriage, the count being based on section 15225, 3 Comp. Laws 1915:

"SECTION 34.   Every person who shall wilfully' administer to any pregnant woman any medicine, drug, substance or thing whatever, or shall employ any instrument or other means whatever, with intent thereby to procure the miscarriage of any such woman, unless the same shall have been necessary to preserve the life of such woman, or shall have been advised by two physicians to be necessary for that purpose, shall, upon conviction, be punished by imprisonment in a county jail not more than one year, or by a fine not exceeding five hundred dollars, or by both such fine and imprisonment."

The offense so defined by the statute is a misdemeanor.

We quote section 15224, 3 Comp. Laws 1915:

"SECTION 33.   Every person who shall administer to any woman pregnant with a quick child, any medicine, drug or substance whatever, or shall use or employ any instrument or other means, with intent thereby to destroy such child, unless the same shall have been necessary to preserve the life of such mother, or shall have been advised by two physicians to be necessary for such purpose, shall, in case the death of such child or of such mother be thereby produced, be deemed guilty of manslaughter."

The information was not filed under the section last quoted, as there is no averment that the woman

was pregnant with quick child. The offense defined in section 15224 is made by the statute manslaughter, not murder. *People* v. *Olmstead*, 30 Mich. 431; *People* v. *Sessions*, 58 Mich. 594; *People* v. *Aikin*, 66 Mich. 460 (11 Am. St. Rep. 512).

The legislature did not intend to make the misconduct with intent to procure miscarriage, set forth in section 15225, where death of the woman ensues, a more serious offense than like misconduct with intent to destroy a quick child resulting in death, as set forth in section 15224. If death of the woman results from the act or acts with intent to procure miscarriage as defined in section 15225, the offense is manslaughter. *People* v. *Abbott*, 116 Mich. 263.

The trial judge in his charge defined murder in first and in second degree, instructed the jury to determine if defendant was guilty of murder so defined, and said further:

"If you find this respondent guilty of murder you must determine and state in your verdict which degree of murder you find him guilty of.

"Accordingly, as you find the facts to be, you may acquit respondent of the graver charge of murder, but still find him guilty of a lesser charge.

"If you do not find this respondent Stahl guilty of murder of either the first or second degree, you will proceed to determine whether he is guilty of the remaining charge of manslaughter." * * *

To support such instruction the prosecution insisted in the circuit court and here argues that there was some evidence that the operation on the woman was done with intent to kill her, and stress is laid on testimony that the autopsy disclosed that the uterus had been punctured, evidently by a curet. But there is no evidence to support the charge of murder.

Dr. Clark, a witness for the people, stated the case in fact:

"The pregnant uterus is very taut, similar, perhaps, to a balloon blown up, and it would depend on the technique of the person as to whether it is easy to avoid the puncturing of the uterine wall. * * * From my examination the cause of her death was uterine hemorrhage and puerperal sepsis as a result of the evacuation of the contents of the uterus, ordinarily known as abortion."

The technique of the operation does not of itself determine the character of the crime. The theory of murder ought to have been omitted. But it is urged that defendant was not prejudiced in this respect because the jury acquitted him of the major charge of murder, the verdict being of manslaughter; citing *People* v. *Knapp,* 26 Mich. 112; *People* v. *Sharp,* 163 Mich. 79; *People* v. *Lieska,* 161 Mich. 630; *People* v. *Klise,* 166 Mich. 1; *People* v. *Collins,* 166 Mich. 4. These cases are applicable where there is some evidence at least to support the charge, or degrees of crime charged and submitted to the jury. But they ought not to be held as excusing the instruction here respecting the major charge of murder where there is no evidence to support it. Fancied cases to illustrate the point will suggest themselves.

When twelve jurors agree on amount or degree generally there must be composition of views. Here the jurors to determine degree were required improperly to compose their views between the major charge of murder in its degrees, and manslaughter. Defendant testified; if truly, he was innocent. The case was serious, sad. If the murder feature had been omitted from the instructions, and the case submitted on the theory of manslaughter, it cannot now be said with certainty that the jury would have reached the same result.

We quote syllabus of *People* v. *Cismadija,* 167 Mich. 210:

"In a prosecution for an assault with intent to commit murder, it was error to charge the jury that respondent, who in a dispute with complaining witness, on being attacked by him, shot complaining witness in the scuffle, would have been guilty of murder if the victim had died and if the other elements of the crime were present; because the record contained no evidence justifying a higher charge than manslaughter."

And see 16 C. J. pp. 1025, 1043; *Gipe* v. *State,* 165 Ind. 433 (75 N. E. 881, 1 L. R. A. [N. S.] 419).

The instruction is erroneous.

The people's chief witness was a Mrs. Irving, a nurse. It is shown on a motion for a new trial that she also testified in the separate and later trial of the doctor in the case, who was acquitted. A comparison of her testimony in the two cases shows inconsistencies seriously affecting the credibility of her testimony in the case at bar. In this connection, too, counsel assign error and argue at length that in cross-examination of such witness they were unduly and improperly restricted by the court.

Some of my Brethren have the opinion that the error first above discussed is not of itself sufficient ground for reversal here, but all agree that on the whole record a new trial should be granted.

Judgment reversed. New trial granted. Defendant remanded to the custody of the sheriff.

BIRD, C. J., and SHARPE, STEERE, FELLOWS, WIEST, and McDONALD, JJ., concurred.

Justice MOORE took no part in this decision.