PEOPLE v. MARSHALL.

HOMICIDE—MANSLAUGHTER—INCLUSION OF CHARGES OF FIRST AND
SECOND DEGREE MURDER.

> Denial of motion by defendant in prosecution under an informa-
> tion charging her with first degree murder of man whom she
> had stabbed several times in effort to free herself from him
> while he was choking her, whereby she sought to quash the
> first and second degree murder counts and to submit to the
> jury only the charge of manslaughter, *held*, reversible error,
> where no evidence was disclosed justifying a conclusion that
> premeditation existed, or that there was an intent to kill, and
> it may not be said defendant was not prejudiced by the
> intrusion of the more serious charges, merely because the jury
> convicted her of manslaughter.

Appeal from Recorder's Court of Detroit; Skill-
man (W. McKay), J. Submitted April 12, 1962.
(Docket No. 70, Calendar No. 49,222.) Decided May
18, 1962.

Joann Marshall was convicted of manslaughter.
Reversed and remanded for new trial.

*Frank J. Kelley,* Attorney General, *Eugene Kra-
sicky,* Solicitor General, *Samuel H. Olsen,* Prosecut-
ing Attorney, *Samuel J. Torina* and *Angelo A.
Pentolino,* Assistant Prosecuting Attorneys, for the
people.

*Stuart D. Hubbell,* for defendant.

REFERENCES FOR POINTS IN HEADNOTE
26 Am Jur, Homicide § 12.

Kelly, J. Defendant was tried on an information charging her with first degree murder for the death of one John M. Reid.

At the conclusion of proof, a motion on behalf of defendant to quash the first and second degree murder counts and to submit to the jury only the charge of manslaughter was denied.

The jury found defendant guilty of manslaughter. She was sentenced to not less than 3 years nor more than 15 years in the Detroit house of correction.

Defendant and her associate, both prostitutes, accosted deceased and accompanied him in his car to a parking lot where he paid them $20 and all 3 participated in acts of sexual depravity for a period of approximately 1 hour. Defendant and her associate requested deceased to drive them back to where he had picked them up. He insisted that they remain with him in the car and in their endeavor to get out a struggle ensued.

When deceased started choking defendant she stabbed him on the hands and arms and once in the thigh with a penknife.

Defendant and her associate finally got away from deceased and he then drove the car from the lot. He was found by police with his car up over the curb, the motor running and the wheels spinning, and his body leaning back from the steering wheel.

Dr. Edward S. Zawadzki, called as a witness for the people, testified as follows:

"The body having been appropriately identified was taken to the autopsy room, where it was first inspected and, on inspection, found a white male, 6 feet 2 inches in height, 275 pounds in weight, and of an apparent age of 43. The hair was brown; eyes were gray. The skin over the left wrist, right thigh and right forearm presented what appeared to be stab wounds. The one on the right thigh was located on the inner aspect; it measured 3-1/4 inches in

length and probed to a depth of approximately an inch. Subsequent examination, toward the termination of the autopsy, showed that a branch of the saphenous vein—large vein—had been severed. This measured .4 of a centimeter or, roughly, between 1/8 and 1/4 inch in diameter. The other cuts described were very superficial and did not sever any vessels of major size.  *  *  *

"Summarizing, examination showed diseased kidneys, or what we technically call, polycystic kidneys. There was generalized arteriosclerosis, involving the coronary arteries rather severely. There was an enlarged heart or cardiac hypertrophy, rather marked, and there was a diseased liver—what we call a fatty liver. There was also pulmonary congestion and also there were the stab wounds and, particularly, the stab wound of the right thigh which severed a large vein in that thigh.  *  *  *

"In my opinion, death followed because of shock and hemorrhage due to stab wounds of the left hand, right forearm and, particularly, in the right thigh, and this was also accompanied by diseased processes. Naturally, arteriosclerotic hypertensive heart disease and polycystic kidneys. All of these factors contributed to the death."

Appellant, in her brief, after calling attention to the fact that the wounds defendant inflicted upon deceased were mostly about the hands and superficial in nature, stated:

"It is true that a wound was also inflicted on the leg of deceased, but this again was not of great depth or on a portion of the body which was ordinarily likely to cause serious injury. It is clear from defendant's statement that this cut on the leg must have occurred in the struggle when defendant missed the hands of the deceased and the knife accidentally went down and struck his leg.

"While it was defendant's contention at the trial that the deceased died of the serious physical ailments from which he was suffering prior to the

incident between himself and defendant, the jury concluded otherwise and defendant is not attempting in this appeal, to raise any issue relative to the cause of death in view of the adverse jury decision. Nevertheless, it is certainly relevant to the trial court's position to consider the superficial type of wound inflicted by defendant and the fact that most of the wounds were inflicted about deceased's hands. We contend that this verifies defendant's statement and the statement of Doris Thomas that defendant sought only to free herself from the deceased's grip about her throat and that there was no evidence whatsoever of any intention to kill or inflict great bodily injury. Any claim of malice is certainly refuted by this evidence as well."

The record fails to disclose facts that would justify a conclusion that premeditation existed, or that there was an intent to kill, and if the jury had returned a verdict of guilty of murder in the first degree we would have set it aside as being unsupported by the evidence.

Defendant's motion should have been granted. It cannot be said defendant was not prejudiced because the jury acquitted her of the major charge of murder and convicted her of manslaughter.

In *People* v. *Stahl,* 234 Mich 569, we reversed a jury verdict and judgment for manslaughter and granted a new trial. We there said (p 572):

"The theory of murder ought to have been omitted. But it is urged that defendant was not prejudiced in this respect because the jury acquitted him of the major charge of murder, the verdict being of manslaughter; citing *People* v. *Knapp,* 26 Mich 112; *People* v. *Sharp,* 163 Mich 79; *People* v. *Lieska,* 161 Mich 630; *People* v. *Klise,* 166 Mich 1; *People* v. *Collins,* 166 Mich 4. These cases are applicable where there is some evidence at least to support the charge, or degrees of crime charged and submitted to the jury. But they ought not to be held

as excusing the instruction here respecting the major charge of murder where there is no evidence to support it. Fancied cases to illustrate the point will suggest themselves.

"When 12 jurors agree on amount or degree generally there must be composition of views. Here the jurors to determine degree were required improperly to compose their views between the major charge of murder in its degrees, and manslaughter. Defendant testified; if truly, he was innocent. The case was serious, sad. If the murder feature had been omitted from the instructions, and the case submitted on the theory of manslaughter, it cannot now be said with certainty that the jury would have reached the same result."

The conviction and sentence are set aside and the case is remanded for new trial.

CARR, C. J., and DETHMERS, BLACK, KAVANAGH, SOURIS, and OTIS M. SMITH, JJ., concurred.

ADAMS, J., did not sit.