Albert **B. BROOKE**, Appellant,

v.

**UNITED STATES** of America, Appellee.

No. 20241.

United States Court of Appeals
District of Columbia Circuit.

Argued Nov. 22, 1966.

Decided April 19, 1967.

Petition for Rehearing En Banc Denied
May 23, 1967.

Mr. Mark E. Fields, Washington, D. C. (appointed by this court), for appellant.

Mr. Charles A. Mays, Asst. U. S. Atty., with whom Messrs. David G. Bress, U. S. Atty., and Frank Q. Nebeker and Joel D. Blackwell, Asst. U. S. Attys., were on brief, for appellee.

Before BASTIAN, Senior Circuit Judge, and LEVENTHAL and ROBINSON, Circuit Judges.

SPOTTSWOOD W. ROBINSON, III, Circuit Judge:

Convicted by a jury and sentenced on three re-tried counts [1] charging violations of federal narcotic drug laws,[2] appellant contends that the District Court erred in (a) refusing to instruct the jury on the defense of entrapment; (b) ruling that appellant's prior convictions could be used for purposes of his impeachment in the event that he testified; (c) permitting an undercover police officer, on the Government's rebuttal case, to contradict testimony given by a defense witness; and (d) denying appellant's motion for a judgment of acquittal sought on the ground that parts of the officer's testimony were uncorroborated. Our investigation of these claims, however, convinces us that the determinations to which they are addressed were correct. We accordingly affirm.

---

1. At his original trial, appellant was convicted on the first five of the seven counts of the indictment. After an appeal was taken, and on the Government's motion, we reversed the conviction on a ground unrelated to the present appeal and remanded the case for a new trial. Brooke

v. United States, No. 19,060, June 18, 1965. The retrial involved only the first three counts, the others having been severed for separate trial.

2. 21 U.S.C. § 174, 26 U.S.C. §§ 4704(a), 4705(a).

I

During 1964, Private William L. Hampton functioned as an undercover agent for the Narcotics Squad of the Metropolitan Police Department. An addict, George Pettas, cooperated in the venture by introducing Hampton to narcotics peddlers. Hampton and Pettas were the principal witnesses heard at appellant's trial.

Hampton testified that on February 27, 1964, appellant approached a parked automobile occupied by Hampton and Pettas and asked whether they "were looking," that is, if they were seeking narcotics. Receiving an affirmative response from Hampton, appellant inquired as to how many "things," idiomatic for "capsules," they desired, to which Hampton replied that he wanted ten. Appellant asked for the purchase price and was given $15 in special police department funds. He then left, returning a few minutes later to deliver to Hampton ten capsules filled with a white powder. Subsequent chemical analysis, according to other testimony for the Government, revealed the presence of heroin in five of the capsules but only talcum powder in the others.[3]

Pettas, as a defense witness, gave a different version. Needing drugs himself on that date but lacking funds with which to buy them, he prepared ten "blank" capsules by filling them with talcum powder. Prior to any transaction with Hampton, Pettas engaged appellant in a conversation behind the parked car from which a scheme to obtain money from Hampton evolved. Pettas requested appellant, as a favor, to give him $15 and recoup it by selling the ten capsules to Hampton for that amount, stating that the capsules contained only talcum powder. Appellant agreed, gave Pettas $15, and thereafter sold the capsules to Hampton.

Instructions on the law of entrapment had been given at appellant's original trial. At the outset of retrial, the judge inquired as to whether that defense would be asserted. Appellant's counsel expressed his "current thinking" that the contention, rather than entrapment, would be that the transaction was "just not a knowing possession or sale."[4] After the close of the evidence, however, counsel requested an "entrapment" instruction,[5] at one point stating:

"The jury could conceivably find that these were genuine narcotics, and that Pettas did do everything he said he would, but still knew, himself, that they were genuine, and was hoping to snag him to improve his own record."

The trial judge denied the request, deeming the evidence insufficient to raise an entrapment issue. His charge, not otherwise objected to, informed the jurors that appellant could not be found guilty of any offense for which he was being tried unless at least some of the capsules contained a narcotic drug and unless appellant actually knew this to be the fact.

Counsel's "entrapment" request was supported by what appears to have been a suggestion of the familiar frame-up which, although involving essentially similar policy considerations, would in the circumstances of this case be some-

3. The Government's evidence *in toto* warranted findings that all other essential elements of each of the three offenses charged were proven beyond a reasonable doubt.

4. Counsel elucidated: "Our defense, as far as this man is concerned, is that he was just going through the motions of selling 10 capsules filled with talcum powder, and it could not be called entrapment, but I think most certainly it is just an unknowing sale or possession, and I think that is a defense if that were proven."

5. The request was oral, without delineation of even the outlines of the instruction sought, and the trial judge pointed to the fact that it did not comply with F.R.Crim. P. 30. Since we conclude, on other grounds, that the judge did not err with respect to this request, it is unnecessary to consider whether noncompliance with the Rule was alone a sufficient justification for its denial.

thing quite different.[6] Undoubtedly, in the context of a tense and fast moving criminal trial, this tended to produce confusion. From our reading of the transcript it seems possible that while counsel was endeavoring in the name of entrapment to request an instruction on frame-up, the trial judge, accepting the misnomer at face value, may have ruled on the request in the belief that it sought an instruction on entrapment. With conditions so odd, and in the interest of assuring full justice, we have examined the record in order to reassess the need for additional instructions pertaining to either entrapment or frame-up. We have concluded that, viewed in either aspect, the charge as given sufficed.

## II

■ We may assume, without deciding, that for purposes of an entrapment instruction, the jury might properly have found that appellant was induced by Pettas' entreaty to engage in a sale to Hampton which he was not predisposed to make,[7] and that under the circumstances Pettas was a governmental representative within the meaning of the entrapment doctrine.[8] Nonetheless, an instruction on that subject was both unnecessary and improper unless there was

an evidentiary basis for a finding that, entrapment aside, appellant was guilty of one or more of the offenses charged. The entrapment doctrine operates, not to negate a component of the offense, but to exonerate from criminal liability, because of overriding considerations, one who otherwise would be guilty of the offense.[9] Entrapment, as a legal phenomenon, comes into play only where all essential elements of the offense exist.

■■ Hampton's testimony alone did not occasion an instruction on entrapment.[10] Pettas' testimony could have established not only the inducement and lack of predisposition which make for the entrapment defense, but could also have nullified two essential elements of each of the offenses on trial. Given full credit, Hampton's testimony warranted conviction while Pettas' required acquittal. The trial judge's instructions amply covered those two alternatives.

■ But the inquiry cannot halt here, for jurors ordinarily may, and frequently do, accept some but not all of the testimony related by particular witnesses. Where the situation is conducive, they may support a finding by parts of the testimony of two or more witnesses, and may resort to both prosecution and de-

6. See Smith v. United States, 118 U.S. App.D.C. 38, 43–45, 331 F.2d 784, 789–791 (en banc 1964).

7. See Sherman v. United States, 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958); Masciale v. United States, 356 U.S. 386, 78 S.Ct. 827, 2 L.Ed.2d 859 (1958); Johnson v. United States, 115 U.S.App.D.C. 63, 317 F.2d 127 (1963); Hansford v. United States, 112 U.S.App.D.C. 359, 303 F.2d 219 (en banc 1962).

8. See Johnson v. United States, supra note 7, 115 U.S.App.D.C. at 64–65, 317 F.2d at 128–129.

9. Gorin v. United States, 313 F.2d 641, 653–654 (1st Cir.), cert. denied 374 U.S. 829, 83 S.Ct. 1870, 10 L.Ed.2d 1052 (1963). See also Sorrells v. United States, 287 U.S. 435, 452, 53 S.Ct. 210, 77 L.Ed. 413 (1932); Hansford v. United States, supra note 7, 112 U.S.App.D.C. at 361, 362, 363, 303 F.2d at 221, 222, 223.

10. "It is well settled that the fact that officers or employees of the government merely afford opportunities or facilities for the commission of the offense does not defeat the prosecution. Artifice and stratagem may be employed to catch those engaged in criminal enterprises." Sorrells v. United States, supra note 9, 287 U.S. at 441, 53 S.Ct. at 212. Hampton's testimony portrayed classically what we recently described as "the usual Government stratagem of sending some prospective purchaser to buy narcotics from a known or suspected seller." Smith v. United States, supra note 6, 118 U.S. App.D.C. at 43–44, 331 F.2d at 789–790. We said "[i]n such cases some form of Government activity beyond simply tendering Government-supplied money must be shown before the accused becomes entitled to an entrapment instruction." Id. at 44, 331 F.2d at 790.

fense sources.[11] If, on such a pick-and-choose basis, the evidence permitted findings that appellant knew that one or more of the capsules contained a narcotic drug, but that he was nevertheless induced but was not predisposed to engage in the questioned transaction with Hampton, instructions on entrapment were in order.

As already indicated, the Government's case made available an inference of knowledge without indicating inducement, while appellant's case reflected inducement but negated knowledge. Thus the question is whether the jury could have chosen evidentiary items from each in such fashion as to yield both inducement and knowledge. We answer, on this record, in the negative. We are led to this conclusion by the basic consideration that, despite the jury's broad authority in treating the proofs, the selective process must not be so attenuated as to strain credulity to the breaking point. Among the inquiries we deem relevant when the legitimacy of the process is at stake are whether there must be extensive picking and discarding of evidence, whether the ultimate finding necessitates fragmentation of testimony in such degree as to distort it, and whether facts not supported by proof must be supplied.[12]

To conclude, on the evidence in this case, that appellant was entrapped, the jury would have had to find that Pettas approached appellant, conversed with him, and induced him to sell to Hampton capsules some of which actually and to appellant's knowledge contained a narcotic substance. To do this, it would have had to reject Pettas' testimony that he filled all of the capsules with talcum

powder, and accept Hampton's that he had not tampered with them as well as other Government evidence that five possessed a heroin content. It would have had to accept Pettas' testimony that he had a conversation with appellant, and reject Hampton's that Pettas never left the car. It would then have had to discard Pettas' testimony that he told appellant that the capsules contained talcum powder, while continuing to believe that the conversation took place. And, while accepting Pettas' testimony that there was a conversation, it would have had to throw out much of what was said during that conversation. In sum, it would have had to cancel and substitute from the testimony of Hampton and Pettas on a truly amazing scale.[13]

To have treated Pettas' testimony as somehow yielding an entrapment situation would have twisted it completely out of focus. Pettas testified to a transaction with appellant indivisible in theme and thrust—that he involved appellant in a scheme to defraud Hampton through the use of capsules which actually and to appellant's knowledge contained no narcotic drug. To have extracted from this version any indication that appellant knew of heroin in some of the capsules would have distorted his testimony into something which it clearly was not.[14] Additionally, in so doing, the jury would have had to supply information not forthcoming from the evidence. Pettas testified positively that he told appellant that the capsules contained only talcum powder. That the jury might discard this statement would not license a finding that the very opposite was true.[15] And certainly the jury could not be permitted to speculate, without the slightest

11. Young v. United States, 114 U.S.App. D.C. 42, 309 F.2d 662 (1962); Broughman v. United States, 124 U.S.App.D.C. 54, 361 F.2d 71 (1966).

12. See cases cited *infra* notes 13 to 16.

13. Compare Sylvia v. United States, 312 F.2d 145, 147 n. 1 (1st Cir.), cert. denied 374 U.S. 809, 83 S.Ct. 1694, 10 L.Ed.2d 1032 (1963). See also Sturman v. Davis, 321 Mass. 442, 73 N.E.2d 608, 609 (1947).

14. See Sylvia v. United States, *supra* note 13, 312 F.2d at 147, n. 1; Berardi v. Menicks, 340 Mass. 396, 164 N.E.2d 544, 546, 83 A.L.R.2d 1 (1960).

15. See, *e. g.*, Buckley v. Railway Express Agency, 323 Mass. 448, 82 N.E.2d 599, 600 (1948); Hudiburgh v. Palvic, 274 S.W.2d 94, 99 (Tex.Civ.App.1954).

evidentiary basis, that appellant in some mysterious way learned that some of the capsules contained heroin.[16]

■ We are satisfied that an instruction on entrapment, properly spoken of, was not warranted in the circumstances of this case. Indeed, it would have served not only to mislead the jury but also to obscure a defense which some of the evidence tended to support—that appellant was framed by Pettas.

### III

Appellant's real point, measured by his counsel's statement to the trial judge, was that the evidence warranted an instruction tailored to the contingency that the jury might find that Pettas, knowing that five of the capsules contained heroin, persuaded appellant to engage in the transaction with Hampton in the belief that no narcotic was present. There was ample evidence to support such a theory. Pettas testified that he turned ten capsules over to appellant. Hampton said appellant delivered ten capsules to him. The Government's evidence supported a finding that five of the capsules contained heroin. Other testimony in the case indicated that Pettas' reward for collaborating with Hampton was conditioned upon satisfaction with his work. Accepting this rather short chain of circumstances, a jury might conclude that Pettas put the heroin in the five capsules or at least knew of its presence and, with a view to enhancement of his record, framed appellant by inducing him to sell them to Hampton.

■ Where there is evidentiary support for special facts sustaining a rational defensive theory, to which the court's attention is specifically directed, the defendant is entitled to have the jury charged on that theory.[17] However weak the evidence, however implausible the theory may appear to be, the matter is for the jury's determination.[18] In Smith v. United States,[19] the evidence indicated that a special police employee may have "planted" capsules on the defendant which, when found, formed the basis for his conviction. We held that the trial judge was obligated to honor the defendant's request for an instruction—there, as here, denominated "entrapment"—adapted to the issue as framed. We said that the judge "should have submitted to the jury the question of whether or not this appellant was the victim of a 'frame-up' in the light of the background" of the case.[20]

Similarly, an issue here was whether appellant was duped into unwittingly selling to a police officer heroin contained in capsules represented to contain nothing but talcum powder; in other words, an issue as to whether appellant was ignorant of the presence of the drug, a circumstance that would negate his guilt. The trial judge instructed, however, not only as to the essential elements of each of the three offenses, but also:

"The Government has the burden of establishing beyond a reasonable doubt, first, that the defendant Albert B. Brooke possessed and transferred to Officer Hampton capsules containing genuine narcotic drugs;

"Second, that the defendant actually knew at that time that the capsules or some of them contained narcotics.

---

16. See Parker v. United States, 123 U.S. App.D.C. 343, 359 F.2d 1009 (1966); Greenfield v. United States, 119 U.S.App. D.C. 278, 341 F.2d 411 (1964); MacIllrath v. United States, 88 U.S.App.D.C. 270, 188 F.2d 1009 (1951).

17. Young v. United States, supra note 11, 114 U.S.App.D.C. at 43, 309 F.2d at 663; Levine v. United States, 104 U.S.App.D.C. 281, 282, 261 F.2d 747, 748 (1958); Tatum v. United States, 88 U.S.App.D.C. 386, 391, 190 F.2d 612, 617 (1951); Mc-

Affee v. United States, 70 App.D.C. 142, 147, 105 F.2d 21, 26 (1939).

18. See Parker v. United States, supra note 16, 123 U.S.App.D.C. at 347, 359 F.2d at 1013; Young v. United States, supra note 11, 114 U.S.App.D.C. at 43, 309 F.2d at 663; Tatum v. United States, supra note 17, 88 U.S.App.D.C. at 391, 190 F. 2d at 617.

19. Supra note 6.

20. 118 U.S.App.D.C. at 45, 331 F.2d at 791.

\* \* \* \* \* \*

"Now, you are instructed that knowledge is an essential element of each of the three offenses with which Albert B. Brooke is charged, that is, you may not find Albert B. Brooke guilty of any of these offenses unless you are convinced beyond a reasonable doubt that he was fully aware and understood that at least some of the capsules contained genuine narcotic drugs."

Upon completion of the charge, appellant's counsel, while preserving the point earlier made, expressed satisfaction with what was said.

 We think the charge as given adequately accommodated the issue to which counsel's request for an instruction was addressed. It informed the jury that, to authorize conviction, at least some of the capsules must have contained narcotic drugs and that appellant must have known that they did. Discarding the more glamorous but indecisive evidentiary details, these were the issues the request for the "entrapment" instruction raised, and these the charge covered in clear and concise language shorn of unnecessary verbal embellishments. We hold that nothing more was required.

## IV

After Pettas had testified, appellant made known his desire to take the stand, and sought immunity under Luck v. United States [21] from impeachment by prior convictions of crime in the event that he did so. As the trial judge ascertained, appellant had several times been convicted on charges of selling narcotics.[22] The judge ruled that these convictions could be utilized for impeach-

ment purposes, and appellant decided not to testify.

 In *Luck,* we delineated the discretionary exercise that motions of this type demand. ` Impeachment of an accused by proof of past criminal violations remains a legitimate technique only so far as its probative importance on credibility justifies, in terms of the quest for truth, the inherent risk of prejudice on the issue of guilt. / Judicial wisdom, we said, must be brought to bear upon the situation evolving at trial if the balance is to be appropriately struck. The matter, however, remains one of discretion and, as we have recognized, "that discretion is to be accorded a respect appropriately reflective of the inescapable remoteness of appellate review." [23]

The diametrically opposed testimony of Hampton and Pettas furnished the backdrop against which the judge's determination had to be made. This conflict gave central importance to the fact that appellant proposed to relate to the jury substantially the same version previously narrated by Pettas,[24] and detachment of the embarrassing convictions from his testimony was calculated to artificially inflate its weight on the evidentiary scale. The judge's ruling reflects a considered judgment that with credibility so vital, the cause of truth was not likely to be advanced by permitting appellant to testify to events already delineated to the jury if facts germane to the reliability of that testimony were suppressed.

Convictions for crime retain statutorily [25] some degree of relevance to trustworthiness which *Luck* does not automatically dispel. On the contrary, *Luck* "establishes only that Congress, in

---

21. 121 U.S.App.D.C. 151, 348 F.2d 763 (1965).

22. Appellant's counsel stated that there were two convictions under federal statutes and four under the Uniform Narcotic Drug Act. D.C.Code §§ 33–401 to 33–425 (1961 ed.).

23. Luck v. United States, *supra* note 21, 121 U.S.App.D.C. at 157, 348 F.2d at 769.

24. Comparing appellant's proposed testimony with that already given by Pettas, counsel represented that appellant's "recollection of the events is similar" on all points.

25. D.C.Code § 14–305 (Supp. V 1966).

legislating to the effect that prior convictions may be used to impeach, left some room for the play of judicial discretion over the unfolding circumstances of the immediate trial. The alert and experienced trial judge presiding over a criminal case has a grasp of how the interests of justice are best served in the case taking shape before him." [26] The evaluation Luck requires invariably involves intangibles for which an appellate court's feel is nebulous at best. We do not disturb such highly discretionary adjudications unless the wisdom of doing so is very clear.

■ The trial judge carefully explored the matter and entertained extensive argument from appellant's counsel prior to ruling. So far as we can see, no irrelevance was permitted to invade the equation to contaminate the governing standard.[27] And although appellant did not testify, Pettas' elaborate testimony filled amply what otherwise would have been an absence of proof to combat the inferences suggested by the circumstances.[28] We find no warrant to interfere.

## V

The Government's case in chief left almost completely untouched the matter of any pre-sale conversation or transaction between appellant and Pettas. There was no inquiry whatever on Hampton's direct examination as to whether Pettas had left the automobile or had conversed with appellant before the sale occurred. During Hampton's lengthy cross-examination, there was but one question in that regard, and this elicited only a short answer to the effect that Pettas never got out of the car.[29] It was thereafter, of course, that Pettas testified elaborately to the conversation in the rear of the vehicle during which,

he said, the capsules were passed and arrangements for their sale to Hampton were made.

When, on rebuttal, the Government recalled Hampton, defense counsel objected to any testimony as to whether Pettas had left the automobile, urging as ground that during the Government's presentation Hampton had stated that he had not. The objection was overruled, whereupon the Government propounded a single question in response to which Hampton testified that he was certain that Pettas never got out of the car, and so did not converse with appellant.

■ The admission and scope of rebuttal evidence are matters entrusted to the sound discretion of the trial judge.[30] The conversation and concomitant transaction to which Pettas testified were evidentiary events as vital to the Government as to appellant. There was no occasion for the Government to investigate Pettas' claim until the defense brought it into the case. But when it did so, the Government was entitled to a fair opportunity to meet it, for which defense counsel's minuscule inquiry on Hampton's cross-examination can hardly be viewed as an adequate substitute. Pettas had testified, as a defense witness, to more than departing from the car; he had elaborated upon a conversation with appellant, the delivery of blank capsules to him, and an arrangement for their sale to Hampton. To contradict this testimony the Government could only have Hampton restate that Pettas never left the vehicle, and so could not have talked with appellant or passed blank capsules to him. This the Government did in about the briefest manner possible, and with only modest reiteration.

26. Hood v. United States, 125 U.S.App.D.C. 16, 365 F.2d 949, 951 (1966).

27. Compare Brown v. United States, 125 U.S.App.D.C. 220, 370 F.2d 242, 244–245 (1966).

28. Compare Smith v. United States, 123 U.S.App.D.C. 259, 260–261, 359 F.2d 243, 244–245 (1966).

29. All that occurred was:
"Q. Now did Mr. Pettas get out at any time?
"A. No, sir, he didn't."

30. See, e. g., Cornes v. United States, 119 F.2d 127, 130 (9th Cir.1941); Allison v. Bannon, 128 N.J.L. 161, 24 A.2d 363 (1942).

The lack of merit in appellant's present point thus becomes apparent when fully investigated. We perceive no error or prejudice.

## VI

We reach now appellant's final contention: that the conviction should be upset because it rests in some respects upon Hampton's uncorroborated testimony.[31] We are referred in this connection to Ross v. United States,[32] but it is immediately evident that appellant's reliance upon that decision is grossly mistaken. Appellant presses no claim of unreasonable delay between the offenses and his arrest; the period here was only slightly longer than two months.[33] He does not suggest mistaken identity; he conceded his participation in the transaction with Hampton, but insisted that it was non-criminal. Nor does he assert any loss of evidence or impairment of memory; indeed, he produced Pettas, who detailed the events on the offense date, and was himself prepared to do likewise if the specter of impeachment could have been dissipated.[34] In sum, all significant earmarks of *Ross* save noncorroboration of the undercover agent's testimony are conspicuously absent.

We held, prior to *Ross*, that a conviction for violation of the narcotic drug laws could be sustained upon the uncorroborated testimony of a narcotics agent,[35] and we have reaffirmed this principle since *Ross*.[36] We have decided, too, that jurors are not to be instructed that such testimony is to be suspiciously viewed or cautiously accepted.[37] The plain teaching of these decisions, read together, is that for purposes of credibility, weight, and legal sufficiency to support a conviction, testimony given by narcotics officers is to be tested by the same rules and considerations applicable to ordinary witnesses. The fact that it is the testimony of such an officer does not of itself entitle it to greater respect, but certainly does not relegate it to less.

Affirmed.

31. In this category would fall Hampton's testimony that Pettas and appellant never conversed, and that the capsules in which heroin was discovered were those given to Hampton by appellant.

32. 121 U.S.App.D.C. 233, 349 F.2d 210 (1965).

33. The offenses are alleged to have occurred on February 27, 1964, and appellant was arrested on May 8, 1964.

34. See *supra* note 24.

35. Wilson v. United States, 118 U.S.App. D.C. 319, 320, 335 F.2d 982, 983 (1963).

36. Morrison v. United States, 124 U.S.App. D.C. 330, 365 F.2d 521 (1966); Bush v. United States, 126 U.S.App.D.C. 174, 375 F.2d 602, 604 n. 1 (1967).

37. Bush v. United States, *supra* note 36.