Maurice **EVANS**, Appellant,

v.

**UNITED STATES** of America, Appellee.

John B. **PHILSON**, Appellant,

v.

**UNITED STATES** of America, Appellee.

Nos. 20480, 20481.

United States Court of Appeals District of Columbia Circuit.

Argued June 14, 1967.

Decided May 8, 1968.

Petition for Rehearing En Banc in No. 20,480 Denied July 3, 1968.

Petition for Rehearing En Banc in No. 20,481 Denied July 17, 1968.

Bazelon, Chief Judge, dissented.

Frederick M. Rowe, Washington, D. C. (appointed by this court) for appellant in No. 20,480.

Gerhard P. Van Arkel, Washington, D. C. (appointed by this court) for appellant in No. 20,481. George Kaufmann, Washington, D. C., also entered an appearance for appellant in No. 20,481.

Geoffrey M. Alprin, Asst. U. S. Atty., with whom David G. Bress, U. S. Atty., Frank Q. Nebeker and Victor W. Caputy, Asst. U. S. Attys., were on the brief for appellee.

Before BAZELON, Chief Judge, and BASTIAN, Senior Cricuit Judge, and BURGER, Chief Judge.

BURGER, Circuit Judge:

Appellants were tried together in the District Court on a three-count indictment charging first degree murder, felony murder, and attempted robbery.

The jury returned not guilty verdicts on first degree murder but guilty on the other two counts. The jury being unable to agree on punishment, the court sentenced each to life imprisonment.

The evidence on trial indicated that on the evening of May 19, 1965, Appellants, the deceased (Green) and two women left a restaurant together in Green's car, to purchase some liquor; that Appellants and Green left the car; and that a struggle ensued in which Green was shot. One of the women testified that Appellant Evans struck Green and Appellant Philson pinned him from behind; that the gun was in Green's hands when it went off; and that both Appellants went through Green's pockets after he was shot. The other witness testified that she did not see the shooting; she only heard a shot and heard Green say "please don't kill me."

Both Appellants assert a denial of the right to a speedy trial and claim error in allowing the jury to consider the premeditated murder charge. Appellant Evans asserts error in not ruling to exclude impeachment by prior convictions, Luck v. United States, 121 U.S.App.D.C. 151, 348 F.2d 763 (1965).

(1)

The constitutional right to a speedy trial "is necessarily relative. It is consistent with delays and depends upon circumstances." Beavers v. Haubert, 198 U.S. 77, 87, 25 S.Ct. 573, 576, 49 L. Ed. 950 (1905); see United States v. Ewell, 383 U.S. 116, 120, 86 S.Ct. 773, 15 L.Ed.2d 627 (1966). This Court has recently noted that there is "no touchstone of time" to determine a violation of this right. Hedgepeth v. United States, 124 U.S.App.D.C. 291, 294, 364 F.2d 684, 687 (1966). We must, therefore, look to the circumstances surrounding this delay.

Evans was arrested on May 20 and Philson on May 22; on July 26, the Grand Jury indicted Appellants; their trial was set for October 25, 1965; on October 8, Appellant Evans requested a

mental examination and was sent to St. Elizabeths Hospital; on December 17, he was reported competent to stand trial and trial was set for March 14; on March 11, a continuance until April 18 was granted because the Assistant U. S. Attorney was engaged in other cases; the case was later continued until May 19 because too many cases were scheduled for April 18; another continuance was granted, until June 22, "per assignment office"; a final continuance until July 18, 1966, resulted when the Government was not ready on June 22 and asked to carry the case to the next day but it was instead set down for July 18 at the request of Evans' counsel. In all, some fourteen months elapsed from arrest until trial during which time both Appellants were held without bail.

 In evaluating the facts of the present delay, we employ the test of Smith v. United States, 118 U.S.App. D.C. 38, 41, 331 F.2d 784, 787 (1964) (en banc): "the balance between the rights of public justice and those of the accused has been upset against the Government only where the delay has been arbitrary, purposeful, oppressive or vexatious." Perhaps some delays are so long that a mere showing of that delay will demonstrate a violation of the Constitution.[1] But this is not such a case. The first two months' delay here was between the offense and the indictment. The next three months' delay was until the overloaded criminal calendar could accommodate the case. Then a five-month delay resulted from Evans' request for a mental examination and the necessity to again place the case on the calendar. Of the four subsequent delays, two were due to the assignment office's having no

judges available to try the case, one was because the prosecutor was engaged in other cases and the last was attributable to both the prosecutor and Evans' attorney.

The recitation of these facts demonstrates that, rather than being purposeful, the delay was an unfortunate consequence of the crowded criminal courts,[2] in a period when there is a great increase in criminal indictments and a marked drop in the dispositions by pleas of guilty. But the remedy does not lie in voiding convictions absent a showing of prejudice apart from the fact of detention.

### (2)

 Appellants urge that the submission to the jury of the premeditated murder count was reversible error, even though the jury acquitted on this count. Their claim is that there was insufficient evidence to submit this charge to the jury, and that the jury may have been induced to believe there was enough evidence for this charge and thereby encouraged to "compromise" on felony murder.

Even were we to accept Appellants' invitation to follow the decision of the Second Circuit in United States ex rel. Hentenyi v. Wilkins, 348 F.2d 844 (2d Cir. 1965), cert. denied, 383 U.S. 913, 86 S.Ct. 896, 15 L.Ed.2d 667 (1966), we would not find prejudice here. *Hentenyi* held that submission of an unwarranted first degree murder charge[3] was prejudicial when the jury returned a verdict of guilty on a second degree murder charge. But *Hentenyi* involved a lesser-included offense, and the court there relied on the likelihood that the jury com-

---

1. *See* Petition of Provoo, 17 F.R.D. 183 (D.Md.), aff'd per curiam, 350 U.S. 857, 76 S.Ct. 101, 100 L.Ed. 761 (1955).

2. *See* King v. United States, 105 U.S.App. D.C. 193, 265 F.2d 567, cert. denied, 359 U.S. 998, 79 S.Ct. 1124, 3 L.Ed.2d 986 (1959).

3. The charge was unwarranted because the Second Circuit, in habeas corpus proceed-

ings, found that former trials in which the petitioner had been convicted only of second degree murder made it "fundamentally unfair" to charge first degree murder again, and that prejudice resulted when in the last trial a conviction for second degree murder was obtained. As distinguished from the present case, *Hentenyi* involved *unconstitutional* submission of the first degree murder count.

promised to reach its verdict.[4] The present case involves a felony murder charge, which is a separate charge, not a lesser-included offense. The court instructed the jury—more favorably than the law required—that it was to consider the felony murder charge first and if they found Appellants guilty, not to reach the first degree murder charge but to acquit. The Government failed to object; and the jury found Appellants guilty of felony murder but acquitted as to the first degree murder which suggests the jury approached its "task responsibly * * * to sort out discrete issues given to them * * *." Spencer v. State of Texas, 385 U.S. 554, 565, 87 S.Ct. 648, 654, 17 L.Ed.2d 606 (1967).

### (3)

■ The third issue relates only to Appellant Evans. The *Luck* issue having been raised, the District Judge ruled that Evans would be subject to impeachment by the introduction of his prior convictions for petty larceny and narcotics offenses. It is urged that the trial judge should have exercised the discretion vested in him under Luck v. United States, *supra* to exclude these convictions. Subsequent to the trial in the instant case, we had occasion to review some of the relevant factors for the judge to weigh in exercising this discretion, in light of experience under *Luck*. *See* Gordon v. United States, 127 U.S.App.D.C. 343, 383 F.2d 936 (1967), cert. denied, 390 U.S. 1029, 88 S.Ct. 1421, 20 L.Ed.2d 287 (April 22, 1968). One of these factors is whether the conduct underlying the conviction has a "bearing on veracity." In *Gordon* we noted that

acts of deceit, fraud, cheating, or stealing, for example, are universally regarded as conduct which reflects adversely on a man's honesty and integrity. Acts of violence on the other hand, which may result from a short temper, a combative nature, extreme provocation, or other causes, generally have little or no direct bearing on honesty and veracity.

*Id.* at 347, 383 F.2d at 940 (footnote omitted). The larceny conviction would plainly fit the *Gordon* guidelines as relating to veracity. The relationship of the narcotics offense to veracity is somewhat less clear; however, we need not resolve that issue. It is dispositive of the present claim that, in order to demonstrate on appeal an abuse of discretion under *Luck*, it must be shown that the Appellant met his burden of demonstrating some affirmative reasons why the circumstances of his case were such as to make his testimony particularly necessary.

In Hood v. United States, 125 U.S.App. D.C. 16, 18, 365 F.2d 949, 951 (1966), Judge McGowan undertook to emphasize the defendant's burden under *Luck*, pointing out that there was no abuse of discretion where

[n]o representation was made to the trial court as to what Hood's testimony would be, or why it was important that, at least in this case, the court's discretion should be exercised to prohibit introduction of the prior conviction.

Defense counsel here tendered only one argument to meet this burden[5]—that there were contradictions and inconsistencies in the Government's case[6] but

---

4. In all the state cases cited as finding prejudice, the conviction was for a lesser-included offense. *See* Tate v. People, 125 Colo. 527, 247 P.2d 665 (1952); Gipe v. State, 165 Ind. 433, 75 N.E. 881 (1905); People v. Marshall, 366 Mich. 498, 115 N.W.2d 309 (1962); People v. Stahl, 234 Mich. 569, 208 N.W. 685 (1926); Clark v. State, 131 Neb. 370, 268 N.W. 87 (1936).

5. Counsel also argued that the use of the narcotics conviction would be unduly prej-

udicial and that there was prejudice in that Appellant would refuse to testify if subject to impeachment. Of course, neither of these arguments relates to the peculiar need for Appellant's testimony in this case.

6. No specific contradictions in the testimony of prosecution witnesses were mentioned by trial counsel. Apparently, he was referring, among others, to the testimony of the two women who were in the car with Appellants and Green. One

pointed to nothing in what the accused might say that would bear on this. We are not persuaded that inconsistencies relating, as these do, to essentially collateral matters demonstrate any special need for the defendant's testimony free from impeachment. Were the issue as presented by the dissent we would be inclined to agree with that view; however, the factors which the dissent relies on are those which Judge Bazelon spells out, not those presented by counsel. The real issue is whether Appellant met the burden of showing a special need for the jury to hear his version of the events. We are unwilling to find an abuse of discretion on the basis of factors not called to the attention of the District Judge.

■ It is clear that the District Judge afforded defense counsel abundant opportunity to present his contentions concerning the *Luck* issue. As we have previously intimated, it is not enough merely to refer to the *Luck-Gordon* standards and then to sit back. Hood v. United States, *supra.* The defense must show how and why this case calls for a discretionary "exemption" from the impeachment permitted by statute. Nor, by the same token, will merely stating that it is important for the defendant to testify be sufficient to meet this burden. The *Luck* issue would not arise unless the defendant wanted to testify, and every defendant with a record can assert that his chances of acquittal would improve if he could testify free of impeachment by prior convictions. Congress has determined that a defendant who wishes to testify may be so impeached. 14 D.C. CODE § 305 (1967). All *Luck* and its progeny have done is point to the discretion in the district judge to exclude some or all prior convictions in some cases, when good reason is shown. This Court will not find an abuse of that discretion unless the defendant has presented cogent reasons calling for his unimpeached

testimony. The possibility of undue prejudice from impeachment by prior convictions is an important factor, but it is relevant only after the threshold burden of demonstrating the peculiar need for the defendant's testimony has been met.

■ *Luck* and *Gordon* are tools to be used by the defense counsel, as those opinions and *Hood* make clear. Here the defense counsel showed an awareness of the *Luck* holding and the District Judge, in his colloquy with counsel, referred to *Hood* and other cases following *Luck;* defense counsel did no more than allude to alleged discrepancies in the prosecution testimony. Because he did not make any affirmative showing of why there was a special need for the Appellant's testimony here, this record does not demonstrate an abuse of discretion. We do not suggest this failure was a default since it could well be he could make no showing. We would anticipate that, in meeting his burden, defense counsel asserting a genuine *Luck* claim would follow the suggestion in *Gordon* by tendering the defendant, out of the presence of the jury, to state his version of the facts or, in the alternative, by making an "offer of proof" on that score summarizing what the accused would say.

The result of the present case should not be taken to mean that the District Judge's treatment of the *Luck* issue was unexceptionable. Viewing the record after the event, we can agree that it could well have been more comprehensive. But development of the scope of the *Luck* discretion and the manner in which it is properly exercised has been recent in this jurisdiction. *See* Williams v. United States, 129 U.S.App.D.C. ——, 394 F.2d 957 (decided April 5, 1968); Barber v. United States, 129 U.S.App.D.C. 193, 392 F.2d 517 (decided March 8, 1968); Payne and Blue v. United States, 129 U.S.App. D.C. 215, 392 F.2d 820 (decided March 5,

woman testified to seeing the fight between Appellants and Green and then seeing Appellants pick Green's pockets after he was shot. She further testified that she went up to Green after Appel-

lants left. The other woman, who did not see the fight, testified that both women fled without looking back after Appellant Evans told them to leave the scene.

1968); Brooke v. United States, 128 U.S. App.D.C. 19, 385 F.2d 279 (1967); Gordon v. United States, *supra;* Lewis v. United States, 127 U.S.App.D.C. 115, 381 F.2d 894 (1967); Brown v. United States, 125 U.S.App.D.C. 220, 370 F.2d 242 (1966); Hood v. United States, *supra.* We should point out, as we did in *Gordon,* that consideration of the *Luck* claims must not be, as here, partly off the record as by informal conference in Chambers. Here again, it is counsel's burden to see to it that the record is complete. The court has a right to assume counsel will discharge this function for there are numerous matters properly conducted in Chamber conferences and off the record. Appellate courts are primarily concerned, in an area such as this, that discretion be exercised by consideration of the proper factors. Placing the trial judge's deliberations on the record should remove any uncertainty as to the actual reasons for the trial judge's decision and also preserve the arguments made to him by counsel. We have already noted that in the present case there was ample opportunity for counsel to present, on the record, all his reasons for requesting the invocation of the *Luck* discretion. In our view, the presentation was such that allowing impeachment does not constitute an abuse of discretion.

Affirmed.

BAZELON, Chief Judge (dissenting):

I agree that there was no error in submitting the premeditated murder count to the jury. However, I believe that the record discloses substantive and procedural defects in the application of Luck v. United States [1] which require a remand for reconsideration.

"The trial court is not *required* [by D.C.Code § 14–305] to allow impeachment by prior conviction every time a defendant takes the stand in his own defense." Luck v. United States, *supra* note 1 at 156, 348 F.2d at 768. There may be cases where it would be of greater importance that the jury hear a defendant's story than the defendant forego testifying because of the fear of prejudice founded upon a prior conviction. *Id.* Among the factors which were relevant to this determination are the nature of the prior crimes, the length of defendant's record, his age and background, and, as we stressed in *Luck,* "the extent to which it is more important to the search for truth * * * for the jury to hear the defendant's story than to know of a prior conviction." *Id.* at 769. Moreover, the prejudice incident to evidence of prior convictions might so out-weigh the usefulness of such evidence on credibility as to require its exclusion.

In the present case there was a 14-month delay between the alleged offense and trial, which the government admits was "unfortunately long." [2] Some government witnesses could not testify without the use of their earlier statements to refresh their recollection [3] and the tes-

---

1. 121 U.S.App.D.C. 151, 348 F.2d 763 (1965). For a recent overview of *Luck* and subsequent cases under it, see The United States Court of Appeals for the District of Columbia Circuit; 1966–67 Term Criminal Law and Procedure, 56 Geo.L.J. 58, 116–129 (1967).

2. Brief for Appellee at 21. The Government went on to say that "appellants have shown a delay, *perhaps overly long in retrospect,* but not of sufficient length to create automatically a denial of the right [to a speedy trial] [emphasis added]." at 22.

3. Government witness Hackley, who was with appellants and the deceased [Green] when the alleged acts took place, was unable to recall a conversation she had with appellants a few days after the shooting. Upon refreshing her recollection she said that she saw both men several days later and that "they were debating about who shot * * * Green * * * Maurice [Evans] said J. B. [Philson] shot him and J. B. said Maurice shot him."

Government witness Brown, who was also with appellants and the deceased during this period, was unable to recall (a) who gave the directions that took the group to the scene of the shooting, (b) exactly who said "please don't kill me" immediately after the shooting, and

timony they gave was contradictory.[4] In these circumstances the defendant's story might well have had a significant, if not decisive, impact on the jury.

The majority contends, however, that these circumstances are not relevant because they were not fully brought to the attention of the trial court by defense counsel. I do not think the court itself is without obligation *sua sponte* to consider the *Luck* doctrine.[5] I agree that the initial responsibility for raising the *Luck* issue rests with counsel. But here counsel invoked the doctrine and proffered some valid reasons for its application. Clearly in such a case the trial court has an independent responsibility to insure that it is properly applied. In this case the trial court plainly did not meet its responsibility. Because, as the record demonstrates, the trial court did not understand the *Luck* doctrine it made no attempt to comply with the procedural requirements for "carefully explor-[ing]"[6] the testimony to be offered by appellant.[7]

(The jury left the court room at 11:30 a. m.)

(AT THE BENCH)

THE COURT: You have made your opening statement.

MR. IANNI: Yes, your Honor.

Your Honor, at this time I am confronted with a problem on behalf of the defendant Evans. He would like to take the stand in his own behalf but he has a prior criminal record. He feels that it would prejudice him if the criminal record were used to impeach him.

THE COURT: Mr. Caputy.

MR. CAPUTY: Yes.

I heard him talking about the Luck decision I think about the criminal record.

THE COURT: Well, now—

MR. IANNI: I would ask the court to allow him to testify and allow him to testify and prevent the Government from using the record to impeach his testimony.

THE COURT: What is the record?

MR. IANNI: I believe there are petty larceny and drug—every one are not crimes of violence, however.

As I understand the Luck case.

THE COURT: We got one the other day. We got Robinson—

MR. IANNI: About the disorderlies, and so on.

THE COURT: Yes.

MR. CAPUTY: I am not going into anything like that.

---

(c) whether she saw Philson just after the shooting. Upon refreshing her recollection she said (a) both "Maurice and J. B. Philson" gave directions, (b) Green said "please don't kill me," (c) but even when confronted with her signed statement still was unable to recall whether Philson was at the scene of the shooting after Green yelled out.

Government witness Holloway, who was awakened by a noise and looked out his window to see the acts charged, also needed to refresh his recollection from an earlier statement.

4. There are several instances of contradictory testimony in the record. For example, Gloria Brown and Alma Hackley were together in the car at the time of the shooting. Gloria Brown testified that while she heard a noise "like a firecracker" and a voice say "please don't kill me," she neither saw nor heard a fight or anything else. She testified that

Evans yelled "split" to them and that she and Alma Hackley then left without looking back. Alma Hackley, on the other hand, testified that she saw a fight, saw Green with a gun in his hand, "heard a woman holler from out of a window," heard a shot and saw Green lying on the ground. She said she saw appellants "going through" the deceased's pockets, and she claimed that "[she] got out of the car and went over to look at Edward [Green]." Thomas Holloway, who watched the fight, did not say he saw any women.

5. See Stevens v. United States, 125 U.S. App.D.C. 239, 370 F.2d 485 (1966) (dissenting opinion).

6. Brooke v. United States, 128 U.S.App. D.C. 19, 26, 385 F.2d 279, 286 (1967).

7. See Hood v. United States, 125 U.S. App.D.C. 16, 365 F.2d 949, 951 (1966).

THE COURT: You see one came down the other day.

MR. IANNI: I am not familiar with that one, Your Honor.

THE COURT: *Off the record.*

(Further discussion at the bench off the record.)

THE COURT: *The Court will rule that* [the record of convictions] *will be introduced.* [Emphasis added.]

Defense counsel, however, was not prepared to let the *Luck* issue rest after such an off the record consideration.

MR. IANNI: Your Honor, please, for the record, let me ask you to consider all of these factors in exercising your discretion.

And he proceeded to make his *Luck* proffer, broadly raising three points: (1) it was important that the jury hear defendant's version of the story; (2) there were conflicts in the testimony of the prosecution's witness; and (3) Evans' conviction on a narcotics charge did not bear on credibility.

THE COURT: They are not acts of violence.

MR. IANNI: That is one big thing.

Another thing is, of course, the extent to which—the importance, as the Court pointed out, the fifth point, "The extent to which it is important in the search for truth, in a particular case for the jury to hear the defendant's story."

Now, the defendant is inclined, not to take the stand if he is going to be confronted with his record. So that the jury would be deprived of his testimony. Now, there is quite a bit even in the Government's case, there is quite a bit of difference between some of their testimony.

THE COURT: The Court feels that you are then in the wrong forum. You should be before Congress, arguing that question.

Now Congress has set the statute.

MR. IANNI: That is true.

THE COURT: Now, the Court cannot understand that the Court of Appeals sort of indicates that the testimony is introduced for proof of guilt, and the evidence is not introduced as proof of guilt.

It is introduced for the sole purpose of elevating the credibility.

Do you follow me?

MR. IANNI: Yes.

THE COURT: Now, Ross, Hood, the Luck, and now the Pinkney case— do you follow me, sort of indicates that the convictions are introduced for proof of guilt.

Now, they used textbooks on the Pinkney case as I recall, referring to the fact that the research of jurors, that they cannot differentiate between credibility and proof of guilt.

But Congress in its wisdom controls the statute, and Congress has said that the Government may introduce this testimony.

Now, your point is well taken, do you follow me?

The Court has put it on the record. But the Court in its discretion feels that the Government is entitled, because it is not introduced—he does not have to commit an act of violence, does not have to have the same type of events.

It is not introduced for that purpose. In other words, if it were introduced for the purpose of showing he has an assaultive nature, or that he is a thief or anything of that kind, the Court would exclude it as proof of guilt.

But the Court specifically will instruct the jury that they are not to consider this as any proof of guilt in this particular case and they may assume that any conviction, that he has already paid society for that particular conviction.

MR. IANNI: Judge, I feel this way about it, especially the charge of narcotics. I think, with the average jury, this is extremely important, the average juror or average layman which we must assume these jurors are, kind of

look upon somebody who has either been addicted to narcotics, or who at one time or another has been connected with narcotics is a bad person.

THE COURT: All right.

MR. IANNI: There might be a tendency then, on their part if they learn this, to sit back there and say to themselves, "Well, I do not know whether Evans is telling the truth or not, but he was once connected with narcotics. He has got to be a bad egg and he probably did do that."

It would prejudice him, I think.

THE COURT: The Court rules that the convictions may be introduced in evidence. You have your position on the record.

These proceedings show that the trial court did not understand (1) that under *Luck* resort to Congress was unnecessary for the exercise of discretion to exclude prior convictions, .(2) that *Luck* is primarily concerned with weighing convictions which bear on credibility against their effect on the presentation of defendant's case if admitted for impeachment purposes, and not particularly with convictions whose admission might suggest "proof of guilt," and (3) that *Luck* requires a "considered judgment" [8] by the trial court in response to defense counsel's argument that it was important for the jury to hear Evans' story. Furthermore the court did not weigh the effect of credibility arising from appellants conviction for narcotics possession and petty larceny against significant facts which were obvious even without counsel's guidance—*e. g.*, that (a) defendant was on trial for a capital offense, (b) he was in custody during all of the 14 months before trial, (c) the delay was not fairly attributable to him,[9] *(d) the government's* principal witnesses needed to re-

fresh their recollection for testifying, (e) the government's witnesses gave contradictory testimony.

Because the trial court misconceived *Luck* and did not consider all the relevant factors, it could not properly exercise its discretion. Therefore, I would remand with directions to do so.

---

8. Brooke v. United States, *supra* note 5, 385 F.2d at 285.

9. Of the five continuances granted, only the first, when Evans sought a pretrial mental examination, is directly attributable to Evans. Two other continuances were sought by the District Court's as-

signment office. One continuance was at the request of the government and another followed the government's failure to be ready to proceed on June 22, 1966. Then, instead of carrying the case over for the next day, the court at the request of Evans' counsel set the trial for July 18.