PEOPLE *v.* SHARP.

1. CRIMINAL LAW—TRIAL—JURY—MISCONDUCT OF JUROR.
   After learning, upon an investigation, that a juror, engaged in the trial of a prosecution for assault with intent to murder, had stated publicly in a saloon during the trial that when he was on a jury and got his mind made up, it would take more than they then had to change it, the court properly discharged the jury, and continued the case to the next term of court.

2. SAME—CONSTITUTIONAL LAW—FORMER JEOPARDY.
   The first trial, resulting in a continuance because the juror was disqualified, did not constitute a former jeopardy.

3. SAME—TRIAL—CROSS-EXAMINATION.
   It was proper for the trial judge to permit such cross-examination of respondent's wife, who was offered by him as a witness, as would enable the jury to discover her true character and to judge of the weight which they should give to her testimony.

4. SAME—EVIDENCE—CURING ERROR.
   Where the defense was that the respondent had learned of improper relations between his wife and the complaining witness, and had attacked and shot the latter while temporarily deranged, error was not committed in receiving evidence of previous improper conduct, offered in good faith by the prosecutor who expected to prove knowledge of the same by respondent, but failed to show such knowledge, the testimony being stricken out by the court, although no reference was made to the withdrawal of the evidence in charging the jury.

5. SAME—TRIAL—ARGUMENT OF PROSECUTOR.
   Impassioned argument by the prosecuting attorney is not reversible error, unless it is unwarranted by the evidence and probably contributed to the result.

6. SAME—REQUESTS TO CHARGE—ASSAULT WITH INTENT TO MURDER.
   Any possible error in the refusal of requests to charge, and in the court's charge concerning the crime of assault with intent to murder, was cured by a verdict convicting respondent of the lesser charge of assault with intent to do great bodily harm less than murder.

Exceptions before judgment from Mecosta; Perkins, J., presiding. Submitted June 24, 1910. (Docket No. 142.) Decided September 28, 1910.

Benjamin Sharp was convicted of assault with intent to do great bodily harm less than the crime of murder. Affirmed.

*Cogger & Broomfield*, for appellant.

*Joseph Barton*, Prosecuting Attorney, for the people.

STONE, J. This case is here upon exceptions before sentence, the respondent having been convicted of the offense of assault with intent to do great bodily harm less than the crime of murder, the information charging that the respondent at the township of Austin, in the county of Mecosta, on October 6, 1908, made an assault upon one Lewis Powers, with intent him, the said Lewis Powers, then and there to kill and murder. Upon arraignment the respondent stood mute, and a plea of not guilty was duly entered. The case came on for trial before a jury duly impaneled and sworn at the February, 1909, term of said court.

After the trial had proceeded into the second day, and after the people had rested their case, and the respondent had sworn two witnesses, the misconduct of one of the jurors was brought to the attention of the trial judge, who made an investigation into the matter by an examination of divers persons, from which it appeared, to the satisfaction of the trial judge, that the said juror had, during the trial of said cause, and after the people had rested their case and two witnesses had been examined on behalf of the respondent, stated publicly, in a saloon in the city where said trial was being had, as follows:

"I tell you when I am on a jury, and get my mind made up, by ———, it will take more than they have got now to change it."

The trial judge, having upon investigation become sat-

isfied that said juror was biased, and disqualified, and unfit to sit in the cause, made and entered the following order in the journal of the court: After stating the title of the cause, and the progress which had been made therein, the order proceeds:

"At this point, it having come to the knowledge of the court that one of the jurymen, Ed. Lewis, had disqualified himself from further acting as a juror in this cause by having expressed in public, at the time when the cause was but partly concluded and before hearing all the evidence on the part of the defendant, the following: (here follows the language above quoted) thereby, in the judgment of the court, disqualifying him from sitting further in the case, therefore, it is ordered by the court now here that the jury be, and is hereby, discharged from the further consideration of this cause. And it is further ordered that this cause be continued until the next term of this court, recognizance to remain in full force and effect. The attorneys for respondent excepted to the action of the court in discharging the jury, and moved that the respondent be discharged, having been once in jeopardy, which motion was overruled by the court, and exception taken by attorneys for respondent."

Thereafter, and at the September, 1909, term of the court, before another jury was impaneled and sworn in said cause, the respondent filed a plea of former jeopardy, setting forth the facts above stated in detail, and at great length, which plea was overruled and denied by the court, and to which ruling respondent's attorneys duly excepted. Thereupon the court proceeded to try said cause before a jury.

Upon the part of the people the evidence tended to show that, on the evening of October 6, 1908, the respondent, while driving on the highway with his brother, met the said Lewis Powers; that the respondent there accused the said Powers of having been guilty of improper conduct with the wife of respondent, and, after some words and threats, the respondent shot said Powers with a revolver, inflicting a severe wound in the region of the

168 MICH.—6.

spine, causing paralysis of the legs.    It appeared that the respondent and his wife were stopping temporarily with his father's family, where the wife of respondent and two children by a former wife had been staying while respondent was West at work during the season of harvest; that during the afternoon of October 6th respondent had been told by one Charles Linsay, a brother-in-law, that Powers had been guilty of improper and criminal conduct with the young wife of respondent, while he, the respondent, had been in the West; that the respondent confronted his wife with these charges, and that she finally admitted the truth of the charges; that respondent became excited and angry, and told his wife that they could not longer live together; that she had packed her trunk and had gone to the depot to take the train to Grand Rapids; that respondent was taking her trunk to the depot, also intending to go to Grand Rapids to have a final settlement with the wife, when he met Powers, and the shooting took place.

The defense relied upon mainly was temporary insanity, and that respondent was not responsible for his conduct and not capable of entertaining a criminal intent, and there was evidence tending to show that his mother and other relatives had been insane.    There are 57 assignments of error.    We have carefully examined the record, and do not deem it profitable to examine each of these assignments separately.    They may be classified as follows:

(1) Error in overruling the plea of former jeopardy.

(2) Errors in overruling objections of respondent's counsel in the cross-examination of respondent's wife, Gazella Sharp.

(3) Rulings of the court in overruling objections of respondent's counsel in the examination of Mary Smith Jackson.

(4) Errors in argument of prosecuting attorney to the jury.

(5) On the charge of the court.

(6) In refusing to charge as requested.

We shall consider these questions in the order in which they are above stated.

1. We are of opinion that the conclusion reached by the circuit judge, the method pursued, and the order made by him, relating to the bias and disqualification of the juror named, were fully justified by the facts disclosed, and find support in the case of *In re Ascher*, 130 Mich. 540 (90 N. W. 418, 57 L. R. A. 806), and the authorities there cited. That is a well-considered case. Its doctrine has never been modified, and it has recently been cited with approval. *Cooper* v. *Carr*, 161 Mich. 412 (126 N. W. 468). We deem it wholly unimportant whether the juror was disqualified when impaneled and sworn, or whether he became corrupted and disqualified during the progress of the trial. In either case the duty of the court to act when such disqualification is discovered is imperative. Much must be left to the sound sense and good judgment of the trial judge in such a case. As was said by Mr. Justice Story in *United States* v. *Perez*, 9 Wheat. 579:

" We think that in all cases of this nature the law has invested courts of justice with the authority to discharge a jury from giving any verdict, whenever in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated. They are to exercise a sound discretion on the subject; and it is impossible to define all the circumstances which would render it proper to interfere."

We are of opinion that the trial judge did not err in overruling and denying the plea of the former jeopardy.

2. In view of the broad scope taken in the direct examination of Gazella Sharp, the wife of respondent, we do not think that there was any error in overruling the objections of respondent's counsel in the cross-examination of this witness. As was said by Justice DURAND in *People* v. *Harrison*, 93 Mich. 596 (53 N. W. 726):

" It was the duty of the circuit judge, upon the cross-examination of the witness, to permit such reasonable interrogation upon the subject as would fairly disclose to

the jury her true character, and thus enable them to judge of the weight which should be given to her testimony."

See, also, *Knickerbocker* v. *Worthing*, 138 Mich. 239 (101 N. W. 540), and cases there cited.   We do not deem it necessary or profitable to here set forth the questions referred to.

3. In rebuttal, the prosecuting attorney sought to show by the witness Mary Smith Jackson certain alleged prior improper conduct of the wife of the respondent, and that the same had been brought to the knowledge of the respondent.   It was claimed that this was proper evidence as bearing upon the real condition of the mind of the respondent at the time of the alleged assault in this case. It appearing, however, that there was no evidence that such alleged prior misconduct had ever come to the knowledge of the respondent, the trial judge struck out the entire testimony of the witness Mary Smith Jackson, and so announced in the presence of the jury.   We gather from the record that the prosecuting attorney acted in good faith in attempting to introduce this evidence, and believed he could show knowledge in the respondent, as claimed. We do not think that there was reversible error here. While the trial judge might have in the charge properly called the attention of the jury to the fact that this testimony had been withdrawn from their consideration, yet, he having ordered it stricken out on the trial, we do not think that the jury was misled.

4. Much complaint is made of the argument of the prosecuting attorney before the jury.   The condition of the respondent's mind at the time of the assault was a subject much discussed by counsel on both sides.   The prosecuting attorney argued that respondent's counsel were invoking the doctrine of the " unwritten law," while the latter claimed that they were within the law as held in this State.   While the arguments of counsel were somewhat impassioned, a careful reading of the argument of the prosecuting attorney fails to disclose any such extreme language as would justify us in reversal of the case.   The

language of Mr. Justice Blair, in *People* v. *Peck*, 147
Mich. 95 (110 N. W. 498), is applicable here:

" We are not disposed to reverse convictions in criminal
cases because of the impassioned arguments of the prose-
cuting officers, unless we can clearly see that such argu-
ments were unwarranted by the evidence and probably
contributed to the result."

5. The charge of the court consisted largely of a discus-
sion of the subjects of murder and assault with intent to
murder, and correctly stated the law upon those subjects,
as defined by this court. As the respondent was convicted
of the lesser offense of assault with intent to do great
bodily harm, much of the criticism of counsel is with-
out force, as respondent was acquitted of the graver
charge. *People* v. *Farrell*, 146 Mich. 264 (109 N.
W. 440). The assignments of error are so general
that it might be said that they are not entitled to consid-
eration. We have, however, examined them in connection
with the charge, and are of the opinion that there is no
error in the charge.

6. Most of respondent's requests to charge relate to the
graver offense of assault with intent to murder. Bearing
in mind the verdict of the jury, we do not think that the
trial judge erred in declining to give them, especially as
the substance of them is embraced in the charge. The
case appears to have been properly submitted to the jury
in a clear charge in the language of the trial judge.

We find no reversible error in the record, the conviction
of the respondent is affirmed, and the circuit court is di-
rected to proceed to judgment.

Ostrander, Hooker, McAlvay, and Blair, JJ.,
concurred.