## PEOPLE v. McPHERSON

1. CONSTITUTIONAL LAW — DOUBLE JEOPARDY — APPLICATION TO STATES.

   The double jeopardy provision of the Fifth Amendment of the Federal Constitution applies to the states through the Fourteenth Amendment (US Const, Ams 5, 14).

REFERENCES FOR POINTS IN HEADNOTES

[1–3, 5–7] 21 Am Jur 2d, Criminal Law §§ 165–169, 473–483.
[3, 4] 21 Am Jur 2d, Criminal Law §§ 219, 317.
[8, 9] 39 Am Jur 2d, Habitual Criminals and Subsequent Offenders § 26 *et seq.*
53 Am Jur, Trial § 488.

2. CONSTITUTIONAL LAW—STATUTES—CRIMINAL LAW—DOUBLE JEOPARDY.

Trying defendant for rape at a second trial violated constitutional and statutory double jeopardy provisions where defendant at his first trial was charged with rape but was convicted of assault with intent to rape (US Const, Am 5; Const 1963, art 1, § 15; MCLA § 768.33).

3. CONSTITUTIONAL LAW — CRIMINAL LAW — DOUBLE JEOPARDY — WAIVER — TRIAL — STRATEGY.

Absent a deliberate act of trial strategy by a defendant, his failure to raise the issue of former jeopardy at the proper time does not result in a waiver of this right.

4. CONSTITUTIONAL LAW—CRIMINAL LAW—WAIVER—PRESUMPTION.

The Court of Appeals will not presume that a defendant waived a constitutional right where the record is totally devoid of any showing that some kind of voluntary, knowing relinquishment of a right was made.

5. CONSTITUTIONAL LAW — CRIMINAL LAW — DOUBLE JEOPARDY — VERDICT — REDUCTION.

Federal constitutional law relating to double jeopardy governs the issue of whether a verdict in a state criminal case can be reduced in order to cure a double jeopardy defect and is applicable retroactively.

6. CONSTITUTIONAL LAW—CRIMINAL LAW—DOUBLE JEOPARDY—LESSER INCLUDED OFFENSE—PREJUDICE.

The possibility of prejudice arising from trying a defendant a second time for a crime of which he has in effect been acquitted at an earlier trial by conviction of only a lesser included offense is so great as to be a denial of due process.

7. CRIMINAL LAW—DOUBLE JEOPARDY—VERDICT—REDUCTION—LESSER INCLUDED OFFENSE.

Reduction of verdict of guilty of rape to a conviction of assault with intent to commit rape was insufficient to cure the prejudicial error of charging the jury on the crime of rape, where defendant on his first trial for rape had been acquitted of that crime by his conviction of assault with intent to commit rape (MCLA §§ 750.85, 750.520).

8. TRIAL — CRIMINAL LAW — PRIOR INCARCERATION — REFERENCES — PREJUDICE.

Prosecutor's reference in summation to jury that defendant had been in jail previously was prejudicial in nature, even though such reference may have been unintentional, where defendant

did not testify in his own defense and the prosecutor's state-
ment was the only indication on the record that defendant
had previously spent time in jail.

9. CRIMINAL LAW—EVIDENCE—FORMER CONVICTIONS—ADMISSIBIL-
ITY.
    Evidence of former convictions or confinements is inadmissible
    unless it is material and relevant to the issue being tried.

Appeal from Recorder's Court of Detroit, George
W. Crockett, Jr., J. Submitted Division 1 December
9, 1969, at Detroit. (Docket No. 5,737.) Decided
February 3, 1970.

Willie J. McPherson was convicted by a jury of
rape. Defendant appeals. Reversed and remanded.

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, *William L. Cahalan,*
Prosecuting Attorney, *Samuel J. Torina,* Chief
Appellate Lawyer, and *Luvenia D. Dockett,* Assist-
ant Prosecuting Attorney, for the people.

*Carl Levin* and *Arthur J. Tarnow* (Defenders'
Office—Legal Aid Defenders Association of Detroit),
for defendant on appeal.

Before: LESINSKI, C. J., and BRONSON and DAN-
HOF, JJ.

LESINSKI, C. J. In April, 1967, defendant was first
tried for the crime of rape, MCLA § 750.520 (Stat
Ann 1954 Rev § 28.788). Following his conviction
of the lesser included offense of assault with intent
to commit rape, MCLA § 750.85 (Stat Ann 1962 Rev
§ 28.280), defendant moved for and was granted a
new trial.[1]

---

[1] A ground for the motion *inter alia* was that the prosecutor at
the time the recommendation for the warrant was issued was the
same man who later became a judge and tried defendant.

At the second trial defendant was again charged with and tried for rape. The jury returned a verdict convicting him of rape. At the sentencing hearing the court held that it was improper for defendant to be convicted of rape, on the grounds that the conviction at the first trial of the lesser included offense acted as an acquittal of the charge of rape, thus making a conviction of rape double jeopardy. The court ruled:

"Accordingly it becomes necessary in order to protect your interests to interpret the jury's verdict not as a verdict of guilty of carnal knowledge of a female with force and against her will, but rather as a verdict of guilty of assault with intent to commit rape, which is the highest offense that the jury could have found you guilty of under the law in this case."

The basic issues raised on appeal are: whether defendant was properly tried a second time for rape, and if not, whether the trial court's reduction of the verdict was a proper cure of the error.[2]

It is settled that the double jeopardy provision of the Fifth Amendment of the Federal Constitution applies to the states by way of the Fourteenth Amendment. See *Benton* v. *Maryland* (1969), 395 US 784 (89 S Ct 2056, 23 L Ed 2d 707). The same provision against double jeopardy is found in the Michigan Const 1963, art 1, § 15.[3]

In keeping with the principle that no person shall be twice put in jeopardy for the same offense, the

_____

[2] We observe for the purposes of this opinion that the prosecutor agrees with defendant and the lower court that defendant was put in jeopardy at his first trial. Therefore, following the general rule that we will not consider points not set forth nor necessarily suggested by the statement of issues in the briefs, we do not reach the question of whether the first trial constituted jeopardy. *People* v. *Wilson* (1966), 5 Mich App 428. GCR 1963, 813.1, 814.1.

[3] "No person shall be subject for the same offense to be twice put in jeopardy. All persons shall, before conviction, be bailable by sufficient sureties, except for murder and treason when the proof is evident or the presumption great."

legislature of this state enacted MCLA § 768.33 (Stat Ann 1954 Rev § 28.1056), which provides as follows:

"When a defendant shall be acquitted or convicted upon any indictment for an offense, consisting of different degrees, he shall not thereafter be tried or convicted for a different degree of the same offense; nor shall he be tried or convicted for any attempt to commit the offense charged in the indictment or to commit any degree of such offense."

Thus, under the restraints imposed by the statute, in the instant case it was error for defendant to be *tried* for the crime of rape a second time because of the result of the previous trial. See *People* v. *Bower* (1966), 3 Mich App 585. Beyond state law, Federal constitutional law equally requires the same result. See *Green* v. *United States* (1957), 355 US 184 (78 S Ct 221, 2 L Ed 2d 199).

While the prosecutor concedes the first trial constituted jeopardy, he argues that defendant waived the issue by not raising it below. *People* v. *Powers* (1935), 272 Mich 303, cited by the prosecutor, held that where the issue is not raised at trial it is waived.

During the nearly 35 years since *Powers* was decided, however, the Federal constitutional law regarding double jeopardy has gone through fundamental changes. *Cf. Palko* v. *Connecticut* (1937), 302 US 319 (58 S Ct 149, 82 L Ed 288), and *Benton* v. *Maryland, supra.* This Court noted these significant changes on the point in question in *People* v. *Bower, supra,* at p 589:

"The double jeopardy issue was not raised by the defendant's counsel prior to the taking of the plea in the circuit court. But in *Henry* v. *Mississippi* (1965), 379 US 443 (85 S Ct 564, 13 L Ed 2d 408), the United States Supreme Court announced that it would not find a waiver of a Federal constitution-

al right solely because of a defendant's counsel's procedural default in timely raising the question. Now we do not intend this opinion to go beyond *Henry, supra,* but feel constrained to follow that case inasmuch as a Federal constitutional right is involved. Since the proceedings in circuit court terminated in a plea, there can be no question of a waiver based upon 'deliberate choice of strategy.' Under the circumstances, absent a deliberate act of the defendant, the procedural default in failing to raise the issue of former jeopardy at the proper time does not result in the waiver of this right."

In light of the *Benton* and *Henry* decisions we conclude that the holding in *Powers* on this point[4] has been preempted by the rulings of the United States Supreme Court. While we note the difference between our case which involved a trial and *Bower* which involved a plea of guilty, we find that the rationale of *Henry,* applied in *Bower,* applies to the instant case equally.

The prosecutor, seeking to avoid the impact of *Henry,* argues: "It would seem that under the circumstances that defendant *having requested through counsel that he be tried on the original charge* that he is now estopped to allege double jeopardy." (Emphasis supplied.) Even assuming *arguendo* the point is valid, a careful search of the record fails to reveal where defendant "requested" that he be tried a second time for rape.

Although there is some indication that trial counsel felt obligated as a matter of law to permit a second trial on the original charge,[5] there is nothing

---

[4] Although *People* v. *Powers* (1935), 272 Mich 303, has been cited in a number of later cases, the sole time it was cited for the point now relied upon by the prosecutor was in Chief Justice BOYLE's lone dissent in *People* v. *Strickland* (1943), 306 Mich 58, 63.

[5] The only reference to the point on the record is the following statement made by the trial court at the sentencing hearing following the second trial:

to support the conclusion that this was a "deliberate choice of strategy." *People* v. *Bower, supra.* The Court in *Green* v. *United States, supra,* at p 191, in discussing waiver stated:

" 'Waiver' is a vague term used for a great variety of purposes, good and bad, in the law. In any normal sense, however, it connotes some kind of voluntary knowing relinquishment of a right. *Cf. Johnson* v. *Zerbst,* 304 US 458 (58 S Ct 1019, 82 L Ed 1461)."

The record is totally devoid of any showing that "some kind of voluntary knowing relinquishment of a right" was made. This Court will not presume the waiver of a constitutional right from a silent record.

As it was error to try defendant a second time for rape, we face the issue of whether the lower court's reduction of the verdict cured the error.

In *United States, ex rel. Hetenyi,* v. *Wilkins* (CA 2, 1965), 348 F2d 844, *cert. den.* (1966), 383 US 913 (86 S Ct 896, 15 L Ed 2d 667), defendant Hetenyi was tried three times on the same indictment for first-degree murder. The first trial resulted in conviction of second-degree murder, the second in a conviction of first-degree murder and the third in a conviction of second-degree murder. In all three trials the court instructed the jury that it could return guilty verdicts of first or second-degree murder or other lesser included offenses.

The Court in *Wilkins, supra,* in an opinion by Judge (now Justice) Marshall, stated at p 864:

"Judge Olsen granted that new trial for the reason that he, Judge Olsen, had been the prosecutor at the time the request for a warrant was filed in your case. However, your counsel seems to have been of the view that under Michigan law the case had to be tried again on the original charge and there is some correspondence with the Court Administrator to that effect."

"Yet we believe that Hetenyi is being held in custody in violation of the due process clause of the Fourteenth Amendment to the Constitution because (1) there was a reasonable possibility that the conduct of the trial and the deliberation of the jury were affected by the fact that Hetenyi was indicted, prosecuted and charged with first-degree murder and (2) the state was constitutionally forbidden to prosecute him for first-degree murder following the completion of the first trial. Both the existence of this possibility of prejudice and the fact that it arises from a violation of the accused's constitutional rights render the process which resulted in his detention constitutionally inadequate, less than that which is constitutionally due.

"The question is not whether the accused was actually prejudiced, but whether there is *reasonable possibility* that he was prejudiced. * * * The ends of justice would not be served by requiring a factual determination that the accused was actually prejudiced in his third trial by being prosecuted for and charged with first-degree murder, nor would the ends of justice be served by insisting upon a quantitative measurement of that prejudice. The energies and resources consumed by such inquiry would be staggering and the attainable level of certainty most unsatisfactory. There could never be any certainty as to whether the jury was actually influenced by the reprosecution or whether the accused's defense strategy was impaired by this scope of the charge, even if there were a most sensitive examination of the entire trial record and a more suspect and controversial inquest of the jurors still alive and available." (Citations omitted.)

Extending this point at pp 865, 866 the Court stated that it:

"would not be justified in excluding the reasonable possibility that the accused was prejudiced by the unconstitutionally broad scope of the prosecution.

The mere fact that Hetenyi *could* have—logically and legally—been convicted of second-degree murder on the basis of all the evidence, does not mean that he *would* have been so convicted if he were not also charged with first-degree murder. For example, it is entirely possible that without the inclusion of the first-degree murder charge, the jury, reflecting a not unfamiliar desire to compromise might have returned a guilty verdict on the first-degree manslaughter charge on the same evidence. There is, of course, no basis for predicting with any confidence, that this would have been the outcome of the third trial if Hetenyi had not been prosecuted for first-degree murder; but neither is there any basis for predicting, with any confidence, that this would not have been the outcome. To make this latter prediction on the basis of the sufficiency of the evidence would be to ignore reality and, in effect, to have judges make the choice entrusted to the jury."

Significantly, the argument presented in *Wilkins* has been applied in this state. In *People* v. *Marshall* (1962), 366 Mich 498, defendant was charged with first-degree murder. At the conclusion of proof defendant moved to quash the first- and second-degree murder counts and to submit only the charge of manslaughter. The trial court denied the motion. Defendant was convicted of manslaughter. On appeal the court stated at p 501:

"Defendant's motion should have been granted. It cannot be said defendant was not prejudiced because the jury acquitted her of the major charge of murder and convicted her of manslaughter.

"In *People* v. *Stahl* (1926), 234 Mich 569, we reversed a jury verdict and judgment for manslaughter and granted a new trial. We there said (p 572):

" 'The theory of murder ought to have been omitted. But it is urged that defendant was not prejudiced in this respect because the jury acquitted him of the major charge of murder, the verdict being of

manslaughter; citing *People* v. *Knapp* (1872), 26 Mich 112; *People* v. *Sharp* (1910), 163 Mich 79; *People* v. *Lieska* (1910), 161 Mich 630; *People* v. *Klise* (1911), 166 Mich 1; *People* v. *Collins* (1911), 166 Mich 4. These cases are applicable where there is some evidence at least to support the charge, or degrees of crime charged and submitted to the jury. But they ought not to be held as excusing the instruction here respecting the major charge of murder where there is no evidence to support it. Fancied cases to illustrate the point will suggest themselves.

" 'When 12 jurors agree on amount or degrees generally there must be composition of views. Here the jurors to determine degree were required improperly to compose their views between the major charge of murder in its degrees, and manslaughter. Defendant testified; if truly, he was innocent. The case was serious, sad. If the murder feature had been omitted from the instructions, and the case submitted on the theory of manslaughter, it cannot now be said with certainty that the jury would have reached the same result.' "

When the United States Supreme Court decided *Benton* v. *Maryland, supra,* it did not explicitly incorporate all the Federal decisions in its application of double jeopardy to the states. After a careful review of *Benton,* however, we conclude that the rule set forth in *United States* v. *Wilkins, supra,* is within the scope of the law announced in *Benton.*

The Court in *Benton*[6] spoke in terms of applying "Federal double jeopardy standards"[7] to the states,[8]

---

[6] The decision in *Benton* v. *Maryland* (1969), 395 US 784 (89 S Ct 2056, 23 L Ed 2d 707), coincidentally, was also written by Justice Marshall.

[7] It is interesting to note that in Marshall's Court of Appeals opinion in *United States, ex rel. Hetenyi,* v. *Wilkins* (CA2, 1965), 348 F2d 844, *cert. den.* (1966), 383 US 913 (86 S Ct 896, 15 L Ed 2d 667), he specifically defined a term he called "The Federal Standard" as follows:

"Under this standard the state reprosecution would be tested by the provision of the Fifth Amendment commanding that no person

rather than in the limited terms necessary to the opinion. Also the Court felt it necessary to distinguish *Wilkins*. At p 798 it stated, by way of footnote:

"There is no danger here that the jury might have been tempted to compromise on a lesser charge because of an erroneous retrial on a greater charge. See *United States, ex rel. Hetenyi,* v. *Wilkins* (CA 2, 1965), 348 F2d 844, 866, *cert. den.* (1966) 383 US 913 (86 S Ct 896, 15 L Ed 2d 667). Larceny is a lesser offense than burglary."

From *Wilkins* and *Benton,* we conclude that the issue of whether a verdict can be reduced as done in the instant case in an effort to cure a double

---

shall be 'subject for the same offense to be twice put in jeopardy of life or limb.' *All the cases applying this clause to federal prosecutions would have the persuasion of precedent, and this inheritance would have the effect of accelerating the usual development of decisional constitutional law.* Such a standard would emanate from a holding that the doctrine of selective incorporation reaches the double jeopardy provision of the Fifth Amendment, and further that this provision is absorbed intact, that the doctrine does not permit a second level of selection." (Emphasis supplied.)

He distinguished this from "The Basic Core Standard" for which he stated:

"Under this standard the state reprosecution would be tested by the Fifth Amendment double jeopardy provision, but there would be a further need to determine, once it is decided that the reprosecution falls within the ambit of that provision, whether such restrictions are fundamental to the provision. Cases applying the provision to federal prosecutions would be of precedential value only after it has been determined that the result did not turn on a technical nuance of the provision."

These two standards were distinguished from a third, "The Fundamental Fairness Standard."

"To apply this standard, the question is asked whether the state reprosecution challenged is fundamentally unfair and the cases applying the Fifth Amendment to federal prosecutions are not binding, although they, like those cases applying double jeopardy provisions derived from state law are entitled to weighty consideration."

If Justice Marshall used the term "federal standard" the same way in both opinions, the clear implication is that Federal cases are to have "the persuasion of precedent."

8 In *Benton, supra,* at p 796, the Court stated:

"It is clear that petitioner's larceny conviction cannot stand once federal double jeopardy standards are applied."

jeopardy defect is governed by Federal constitutional law standards.

The question arises, however, as to whether *Benton* will be applied retroactively.

In *Stovall* v. *Denno* (1967), 388 US 293 (87 S Ct 1967, 18 L Ed 2d 1199), the Court set out several criteria for determining whether a decision will have retrospective effect.[9] The right here involved meets those criteria. The rule against double jeopardy is "fundamental to the American scheme of justice." *Benton, supra,* at p 796. The argument of reliance upon prior practice in this case is no basis for denying application of the United States Supreme Court's latest pronouncements on this point. This rule in no way affects the pretrial action in this case and will not have the effect of obstructing the people's case for a conviction upon evidence properly presented. See *Booker* v. *Phillips* (CA 10, 1969), 418 F2d 424.[10]

There are a number of Michigan cases, however, which reach the opposite result. In *People* v. *Farrell* (1906), 146 Mich 264, defendant was twice tried for first-degree murder. The first trial ended in a conviction of manslaughter, the second ended in a conviction of murder as charged. In a 5-3 decision the majority held that the second verdict could be interpreted as a conviction of manslaughter, the highest lesser included offense permitted after the first trial. More recently this Court in *People* v.

[9] In *Stovall* v. *Denno* (1967), 388 US 293, 297 (87 S Ct 1967, 18 L Ed 2d 1199), the Court stated:

"The criteria guiding resolution of the question implicates (a) the purpose to be served by the new standards, (b) the extent of the reliance by law enforcement authorities on the old standards, and (c) the effect on the administration of justice of a retroactive application of the new standards."

[10] *Cf. Spidle* v. *State* (Mo 1969), 466 SW2d 793. However, since this case was decided, the Courts of Appeals for the Fifth and Sixth Circuits have also held *Benton* retroactive. *Galloway* v. *Beto* (CA5, 1970), 421 F2d 284; *Mullreed* v. *Kropp* (CA6, 1970), 425 F2d 1095.

*Sharp* (1967), 9 Mich App 34, set aside a conviction
of murder, since a previous conviction of aggravated
assault acted as *res judicata* on the issue of intent
and made manslaughter the highest crime of which
defendant could be convicted. In *People* v. *Mc-
Farland* (1968), 14 Mich App 313, and *People* v.
*Lee* (1968), 14 Mich App 328, we set aside the sen-
tence imposed, where the defendant was improperly
convicted of a greater crime than the facts pre-
sented at trial would sustain. Our Court remanded
these cases for imposition of sentence upon lesser
offenses.

*Farrell, supra,* was decided before *Wilkins* and
*Benton* and the result reached therein is inconsistent
with these cases. We also note that our Court, fol-
lowing *Farrell,* decided *Sharp, McFarland* and *Lee*
before *Benton.* When these cases were decided, our
Court applied the then-prevailing Michigan rule of
law to these cases. We now are bound by *Wilkins,*
as made applicable by *Benton.*

Applying the Federal standards of double jeop-
ardy as announced in *Wilkins* and *Benton,* we re-
verse and remand for a new trial.

Defendant raises a second issue on appeal. Dur-
ing the course of summation the prosecutor stated:

"It has been argued that this was an unhappy mar-
riage, and an unhappy home life. And that perhaps
these two women were conspiring to *send this man
back to jail.*"[11]   (Emphasis supplied.)

---

11 The actual argument made during the defense's summation was:
"What was the purpose—what was the purpose of seven days
later—seven days later and they have never called the police? They
claim that somebody else called the police. To this day I don't
know who called the police. What was the purpose—what was the
purpose of bringing this man to trial? I don't know what that
purpose was. But we could—we could speculate. And we could
speculate and say perhaps they wanted him out of the house. For
what reason, nobody knows. That seems to be the only reason
I can figure out as to why they brought this charge."

Defendant did not testify in his own defense and the prosecutor's statement was the only indication on the record that defendant had previously spent time in jail. Defendant challenges the propriety of the prosecutor's remark.

Because we are reversing on other grounds we need not determine whether the issue standing alone would constitute reversible error. We have no reason to believe that the prosecutor's reference to defendant's prior incarceration was intentional.[12] However, the prejudicial nature of the statement remains. It has long been settled law in this state that evidence of former convictions or confinement is inadmissible unless it is material and relevant to the issue being tried. *People* v. *Fleish* (1948), 321 Mich 443.

On remand all references to prior conviction or confinement except by proper evidentiary procedure are to be avoided.

Reversed and remanded.

All concurred.

---

[12] *Cf. United States* v. *Smith* (CA 6, 1968), 403 F2d 74, where the fact of prior incarceration was accidentally brought out in the course of the prosecutor's questioning of one of his witnesses. There the Court noted at p 76:

"Because we are concerned with the prejudicial effect of Mc-Daniel's statement, it is immaterial whether the actions of the prosecutor were intentional or otherwise."