*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

V

OMAR DONTAY WILSON,

      Defendant-Appellant.

UNPUBLISHED
March 10, 2026
9:41 AM

No. 370260
Kent Circuit Court
LC No. 21-001135-FC

Before: LETICA, P.J., and BORRELLO and RICK, JJ.

PER CURIAM.

Defendant appeals by right his jury-trial convictions of felon in possession of a firearm (felon-in-possession), MCL 750.224f; and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b.[1] The trial court sentenced defendant as a fourth-offense habitual offender, MCL 769.12, to 3 to 20 years' imprisonment for the felon-in-possession conviction, and a consecutive two-year sentence for the felony-firearm conviction. We affirm.

## I. FACTUAL BACKGROUND

Victoria Edwards dated the murder victim in this matter for approximately four years before ending that relationship in early 2016. On about April 20, 2016, she began dating defendant. Defendant soon began staying at Edwards's apartment. On May 24, 2016, Edwards drove defendant into the city near the victim's home after defendant told her that he wanted to "check some stuff out." Edwards left her sleeping child at home in the care of her cousin, Johnny Greer. Once they arrived in the area, defendant again asked Edwards to walk with him and repeated that he wanted to "check some stuff out." At trial, Edwards acknowledged that the victim's house was close to where they were walking. After walking together for a period of time, defendant directed Edwards to return to the car. Approximately 10 to 15 minutes later, defendant returned and told Edwards that he had "shot somebody." He described a marijuana sale occurring

---

[1] Defendant was also charged with one count of open murder under MCL 750.316. The jury acquitted him on that charge and a corresponding felony-firearm charge.

on a porch, stated that the victim displayed a firearm, and claimed that he shot the victim in order to get away.

A neighbor was out in the vicinity at the time of the shooting. He claimed to have witnessed it. He waited until it appeared safe, and then knocked on the door of the residence where the shooting occurred. The neighbor informed the victim's father that his son had been shot. The father found the victim slumped on the porch. The victim was later pronounced dead. Law enforcement recovered a nine-millimeter casing from the scene and a .22-caliber firearm that had fallen from the victim's clothing. The autopsy revealed a nine-millimeter projectile lodged in the victim's right upper chest.

Investigators received tips from the community identifying Edwards and defendant. On June 9, 2016, both reported to a parole meeting and were subsequently interviewed regarding the homicide. Defendant denied knowing the victim, though he acknowledged that the victim had previously dated Edwards. He provided a vague account of his whereabouts on the night of the shooting, stating that he had been at Edwards's home late in the evening. He recounted that he visited family, stopped at a gas station around 2:00 a.m., and then returned to Edwards's home to sleep.

Edwards denied knowledge of the shooting but surrendered defendant's cellular phone. The phone contained photographs of defendant posing with multiple firearms. One photograph, dated April 8, 2016, clearly depicted defendant holding a Glock handgun with a visible serial number. Based on the photographs, defendant was taken into custody for a parole violation. A search of Edwards's vehicle revealed a fully loaded, extended nine-millimeter magazine inside a locked glove compartment. The key to that compartment was found on defendant. Later that same day, officers executed a search of Edwards's home and recovered a nine-millimeter Glock from a kitchen drawer. The serial number matched the firearm depicted in the April 8 photograph. Edwards denied placing the firearm in the drawer.

In 2018, defendant pleaded guilty to felon in possession of a firearm and felony-firearm, with an offense date of June 9, 2016. He received a sentence of 20 months to 10 years' imprisonment for felon-in-possession and a consecutive two-year term for felony-firearm. During the plea proceedings, defendant admitted that he had prior qualifying felony convictions. He also acknowledged that the April 8, 2016, photograph showed him holding the firearm. He denied possessing the firearm recovered on June 9, 2016, or knowing how it came to be in the kitchen drawer.

In 2020, defendant was charged in the present case with open murder, felon in possession of a firearm, and two counts of felony-firearm. At trial, Edwards testified and acknowledged that she had previously provided false statements but later cooperated with authorities. Greer testified that on May 24, 2016, defendant left Edwards's apartment with a semiautomatic firearm visible on his person. Forensic testing revealed DNA samples from both defendant and Edwards on the recovered Glock.

At the close of the prosecution's case, the trial court denied defendant's motion for a directed verdict with respect to second-degree murder and the firearm charges. The court instructed the jury that, to convict defendant of felon-in-possession, the prosecution was required

to prove that defendant knowingly possessed a firearm and that he was ineligible to do so. Defendant's ineligibility was stipulated. During deliberations, the jury asked whether the possession had to occur on May 24 or May 25, 2016. After consulting with the parties, the court clarified that the relevant date was "on or about May 25, 2016."

The jury acquitted defendant of second-degree murder and the associated felony-firearm charge but convicted him of one count of felon-in-possession and one count of felony-firearm. Defendant later moved to vacate those convictions on double-jeopardy grounds. He argued that his 2018 conviction encompassed continuous possession of the same firearm from April 8 through June 9, 2016, including May 25, 2016, and that the present conviction therefore constituted a successive prosecution for the same offense. The prosecution argued that the motion was untimely and that the evidence did not establish continuous, uninterrupted possession. The trial court concluded that the motion was untimely but nonetheless addressed the merits. It found no evidence of uninterrupted possession and determined that the jury's verdict was based on testimony establishing possession on or about May 25, 2016.

At sentencing, defendant's guidelines range for felon-in-possession was 7 to 46 months. As a fourth-offense habitual offender, defendant was sentenced to 36 months to 20 years' imprisonment for felon-in-possession and a mandatory consecutive two-year term for felony-firearm, consecutive to his parole status. This appeal followed.

## II. ANALYSIS

### A. DOUBLE JEOPARDY

Defendant argues that his 2018 and 2023 firearm convictions constitute successive prosecutions for the same offense, which violates the Double Jeopardy Clause. According to defendant, the prosecution failed to prove a break in possession between April 8, 2016, and May 25, 2016, thereby rendering the present conviction a successive prosecution for the same offense. We disagree.

Although defendant relies heavily on the April 8, 2016 photograph depicting him holding the firearm, his prior conviction was entered with an offense date of June 9, 2016. Thus, the relevant inquiry is not whether defendant possessed the firearm continuously from April 8 through May 25, 2016, but whether his possession on or about May 25, 2016, was part of a single, uninterrupted episode of possession extending through June 9, 2016.

As an initial matter, we address whether defendant's double-jeopardy claim was properly preserved for appellate review. Generally, for an issue to be preserved, it must be raised in the lower court. *People v Metamora Water Serv, Inc*, 276 Mich App 376, 382; 741 NW2d 61 (2007); *People v Swenor*, 336 Mich App 550, 562; 971 NW2d 33 (2021). Relying on *People v Powers*, 272 Mich 303; 261 NW 543 (1935), the prosecution contends that defendant waived his double-jeopardy argument by failing to raise it before or during trial. Defendant responds that raising the matter in a posttrial motion to dismiss was sufficient.

Our Supreme Court in *Powers*, *id*. at 307 (quotation marks and citation omitted) explained:

As a general rule, the issue of former acquittal, conviction, or other jeopardy should be raised before going to trial on the general issue, assuming that it cannot be tried under the general issue, and practically all courts hold that it must be raised at that stage of the trial, unless there are circumstances that make it inappropriate at that time and appropriate at another time[.]

Thus, the *Powers* Court indicated that a double-jeopardy issue should ordinarily be raised before trial and that it could not be raised for the first time in a postjudgment motion. *Id*. But that principle did not remain intact.

In *People v McPherson*, 21 Mich App 385, 389; 175 NW2d 828 (1970), this Court recognized that *Powers* had been effectively preempted by developments in federal constitutional law. Relying on *Henry v Mississippi*, 379 US 443; 85 S Ct 564; 13 L Ed 2d 408 (1965), this Court explained that, "absent a deliberate act of the defendant, the procedural default in failing to raise the issue of former jeopardy at the proper time does not result in waiver of this right." *McPherson*, 21 Mich App at 390 (quotation marks and citation omitted). This Court emphasized that waiver requires "some kind of voluntary knowing relinquishment of a right," and that the waiver of such a right cannot be presumed from a silent record. *Id*. at 391 (quotation marks and citation omitted).

Our Supreme Court later revisited *Powers* in *People v Cooper*, 398 Mich 450; 247 NW2d 866 (1976), overruled on other grounds by *People v Davis*, 472 Mich 156; 695 NW3d 45 (2005). The *Cooper* Court clarified that *Powers* was limited to its specific facts. *Id*. at 455. The Court further concluded that, without evidence of "an intentional decision to abandon the protection of the constitutional right pertaining to double jeopardy," a defendant is not precluded from raising the issue on appeal. *Id*. at 455-456 (quotation marks omitted).

Although certain panels of this Court have continued to repeat waiver language, see *People v Johnson*, 94 Mich App 388, 390; 288 NW2d 436 (1979); *People v Jones*, 75 Mich App 261, 270-271; 254 NW2d 863 (1977), *Cooper* remains binding precedent. See *People v Crockran*, 292 Mich App 253, 256; 808 NW2d 499 (2011) (stating that this Court is bound to follow Supreme Court precedent and "only the Supreme Court has the authority to overrule its own decisions"). *Cooper* makes clear that failure to raise the issue before trial does not itself establish waiver. Instead, intentional relinquishment is required. *Cooper*, 398 Mich at 455. More recently, this Court additionally clarified that "a double jeopardy issue presents a significant constitutional question that will be considered on appeal regardless of whether the defendant raised it before the trial court." *People v Barber*, 332 Mich App 707, 712; 958 NW2d 288 (2020) (quotation marks and citation omitted).

Here, defendant filed and litigated a posttrial motion squarely raising his double-jeopardy claim. Doing so demonstrates that he did not intentionally relinquish the claim. Accordingly, we conclude that the issue is preserved. *Metamora Water Serv, Inc*, 276 Mich App at 382; *Swenor*, 336 Mich App at 562. We review de novo a double-jeopardy challenge because it presents a question of constitutional law. *People v Ackah-Essien*, 311 Mich App 13, 30; 874 NW2d 172 (2015).

Both the United States and Michigan Constitutions prohibit placing a person twice in jeopardy for the same offense. US Const, Am V; Const 1963, art 1, § 15. The protections include

"(1) protection against a second prosecution for the same offense after acquittal, (2) protection against a second prosecution for the same offense after conviction, and (3) protection against multiple punishments for the same offense." *Davis*, 472 Mich at 161. This case implicates the second protection.

To determine whether a subsequent prosecution violates the double-jeopardy prohibition, Michigan has adopted the *Blockburger* "same elements" test. *People v Nutt*, 469 Mich 565, 576, 588; 677 NW2d 1 (2004). See *Blockburger v United States*, 284 US 299; 52 S Ct 180; 76 L Ed 306 (1932). This test "focuses on the statutory elements of the offense. If each requires proof of a fact that the other does not, the *Blockburger* test is satisfied, notwithstanding a substantial overlap in the proof offered to establish the crimes." *Nutt*, 469 Mich at 576 (quotation marks and citation omitted).

But where the same statutory offense is charged in successive prosecutions, the question becomes whether the prosecution has impermissibly fragmented a single continuing offense. Possession crimes are particularly instructive in this regard. "[T]he felon-in-possession statute (MCL 750.224f) requires proof that the defendant was a convicted felon at the time he possessed a firearm[.]" *People v Thigpen*, 349 Mich App 437, 454; 27 NW3d 647 (2023). Possession may be actual or constructive and may be joint. *People v Hill*, 433 Mich 464, 466; 446 NW2d 140 (1989); *People v Burgenmeyer*, 461 Mich 431, 436-440; 606 NW2d 645 (2000).

Longstanding precedent recognizes that possession is generally a continuing offense. In *People v Beverly*, 247 Mich 353, 356; 225 NW 481 (1929), the Court held that possession "for several days is all one transaction" and that such an offense is continuing "as long as possession existed." Thus, the prosecution may not divide continuous possession into artificial temporal units to create multiple punishments. *Id.*; see also *Brown v Ohio*, 432 US 161, 169; 97 S Ct 2221; 53 L Ed 2d 187 (1977) ("The Double Jeopardy Clause is not such a fragile guarantee that prosecutors can avoid its limitations by the simple expedient of dividing a single crime into a series of temporal or spatial units.").[2]

Put differently, to establish a single continuing possession offense, the record must support uninterrupted control over the firearm. Where the evidence permits an inference that the defendant relinquished control and later reacquired it, the possession episodes are distinct for double-jeopardy purposes. *Beverly*, 247 Mich at 356. With that framework in mind, we turn to the dates at issue. Defendant's argument rests on the premise that he possessed the firearm continuously

---

[2] In *United States v Jones*, 533 F2d 1387 (CA 6, 1976), the Sixth Circuit likewise held that continuous and uninterrupted possession of the same firearm could support only a single conviction. *Id.* at 1390-1392. The court emphasized that possession is a "course of conduct, not an act." *Id.* at 1391. "While the decisions of lower federal courts and other state courts are not binding on this Court," we consider *Jones* for its value as persuasive authority. *People v Walker*, 328 Mich App 429, 444-445; 938 NW2d 31 (2019) (quotation marks and citation omitted).

from April 8, 2016 (the date underlying his prior conviction) through May 25, 2016 (the date charged in the present case). The record does not support that premise.

First, the 2018 prosecution charged defendant with possessing the firearm on June 9, 2016. During the plea colloquy, defendant denied possessing the firearm on that specific date and instead admitted to possessing it at an earlier time depicted in photographs. The trial court specifically asked defendant about June 9, 2016, and defendant entered his plea with that date as the offense date. Thus, although defendant admitted that a photograph from April 8, 2016, showed him holding a firearm, the conviction itself was tied to June 9, 2016. Indeed, in his motion below, defendant argued that his possession was continuous from April 8 through June 9, 2016. The present prosecution, however, concerned possession "on or about May 25, 2016." The felony information, warrant, and complaint consistently identified that date. Additionally, the jury was expressly instructed that the prosecutor was required to prove possession on or about May 25, 2016. Thus, the relevant question is whether defendant continuously possessed the same firearm from on or about May 25, 2016, through June 9, 2016, without interruption.

The evidence does not establish uninterrupted possession. Testimony from Edwards and Greer supported the conclusion that defendant possessed the firearm on or about May 25, 2016. The gun recovered on June 9, 2016, bore the same serial number as the firearm depicted in the April 8, 2016 photograph. But defendant's own theory at trial was that he was not the shooter and that someone else committed the homicide. Both Edwards and defendant denied knowledge of how the firearm came to be in the home on June 9, 2016. Critically, defendant's position necessarily implies a break in possession. If someone else used or controlled the weapon during the homicide and defendant did not possess it at that time, then possession was not continuous. Likewise, during the plea proceedings, defendant denied knowing how the firearm ended up in the drawer on June 9, 2016.

On this record, the jury could reasonably conclude that defendant possessed the firearm on or about May 25, 2016. He subsequently dispossessed it, and then possessed it again on June 9, 2016. The firearm was observed in defendant's possession in early April. It was recovered from Edwards's residence in early June. Defendant denied possessing it on June 9, 2016, and disclaimed knowledge of how it arrived in Edwards's apartment. The trial evidence established that Edwards also had access to and control over the weapon. These circumstances support a reasonable inference that defendant's possession on or about May 25, 2016, was not part of a single, uninterrupted episode extending through June 9, 2016. Accordingly, this case does not involve "a second prosecution for the same offense after conviction." *Davis*, 472 Mich at 161. Because defendant has failed to demonstrate that his April possession and his May possession constituted a single, uninterrupted offense, his successive-prosecution claim fails. The trial court did not err by denying defendant's motion to vacate his conviction on double-jeopardy grounds.[3]

---

[3] Given this conclusion, no further discussion is required regarding defendant's argument that his felony-firearm conviction must also be vacated.

## B. SENTENCING

Defendant also argues that his within-guidelines sentence was excessive and disproportionate. We disagree.

We review a challenge to a within-guidelines sentence for reasonableness under *People v Steanhouse*, 500 Mich 453; 902 NW2d 327 (2017), and *People v Pose*y, 512 Mich 317, 326; 1 NW3d 101 (2023). "[T]he standard of review to be applied by appellate courts reviewing a sentence for reasonableness on appeal is abuse of discretion." *Steanhouse*, 500 Mich at 471. We review de novo a trial court's interpretation of a statute. *People v Shenoskey*, 320 Mich App 80, 82; 903 NW2d 212 (2017).

"Michigan's sentencing guidelines are now advisory only, but trial courts must still consult the guidelines and take them into account during sentencing." *People v Teike*, 348 Mich App 520, 538; 19 NW3d 733 (2023). "[S]entences that fall within the properly calculated guidelines minimum sentence range are rebuttably presumed to be proportionate." *Id*. "[T]he defendant bears the burden of demonstrating that their within-guidelines sentence is unreasonable or disproportionate." *Posey*, 512 Mich at 359. In general, a proportionate sentence is one that considers "the reformation of the offender, the protection of society, the discipline of the offender, and the deterrence of others from committing the same offense." *People v Boykin*, 510 Mich 171, 183; 987 NW2d 58 (2022). Other relevant factors to be considered include:

> (1) the seriousness of the offense; (2) factors that were inadequately considered by the guidelines; and (3) factors not considered by the guidelines, such as the relationship between the victim and the aggressor, the defendant's misconduct while in custody, the defendant's expressions of remorse, and the defendant's potential for rehabilitation. [*People v Walden*, 319 Mich App 344, 352-353; 901 NW2d 142 (2017) (quotation marks and citation omitted).]

Defendant's minimum guidelines range was 7 to 46 months. The trial court imposed a sentence of 3 to 20 years for felon-in-possession, consecutive to the mandatory two-year felony-firearm term. The minimum sentence fell within the guidelines range. It is therefore presumptively proportionate. Nevertheless, defendant emphasizes that he has not committed any crimes since 2016. The trial court, however, observed that defendant was incarcerated for a substantial portion of that period and that his criminal history included multiple gun-related offenses. The court was entitled to consider those factors in evaluating deterrence, discipline, and protection of society. *Boykin*, 510 Mich at 183.

The record reflects that the court consulted the guidelines, addressed scoring concerns, considered letters submitted on defendant's behalf, and afforded defendant an opportunity for allocution. Defendant has not identified any unusual circumstances that would render his within-guidelines sentence disproportionate. Accordingly, because defendant failed to overcome the presumption of proportionality, the trial court did not abuse its discretion. *Steanhouse*, 500 Mich at 471.

Affirmed.

/s/ Anica Letica
/s/ Stephen L. Borrello
/s/ Michelle M. Rick